23865

The STATE, Respondent v. John Thomas PARKER, Jr., Appellant.

(433 S.E. (2d) 831)

Supreme Court

---

[8]We assume these expenses apply to Frank's counsel.

*James C. Cothran, Jr.*, Spartanburg, *for appellant.*

*Attorney General T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Asst. Attys. Gen. Harold M. Coombs, Jr.*, and *James W. Rion, Jr.*, Columbia, and *Holman C. Gossett*, Spartanburg, *for respondent.*

Heard Mar. 9, 1993; Filed June 1, 1993.

Refiled Aug. 9, 1993; Reh. Den. Aug. 26, 1993.

TOAL, Justice:

Appellant, Parker, was found guilty and sentenced to life imprisonment for murder. We affirm.

## FACTS

Parker and the victim, Miles Gwin, were originally friends in school. Unfortunately at some point their relationship deteriorated. Six months prior to the night of the murder, Parker had backed away from Gwin's invitation to fight saying that "I don't want to start nothing." This downward spiral continued, and by the night of the murder, the only feelings existing between Parker and Gwin were hatred and open hostility.

On the evening of November 17, 1990, Gwin and several friends stopped at the well-lit parking lot outside of the Westgate Mall in Spartanburg. This parking lot served as a local meeting spot for teenagers and young adults, and Gwin was participating in the social atmosphere. At some point, Gwin and Parker began a heated exchange, which was shortened when Parker called over a friend. This friend, who was over six feet tall, interposed himself between Parker and Gwin and grabbed Gwin by the throat. The friend punched Gwin to the ground and then straddled Gwin's chest while he was lying on the asphalt parking lot. During the beating, another of Parker's friends joined into the melee by kicking Gwin in the ribs. While the fight continued, Parker went to his car and removed a baseball bat. Returning to Gwin, Parker swung the bat striking Gwin in the head. Parker struck Gwin two more times with the bat, and then along with his friends, fled from the parking lot. Gwin died several days later as a result of his injuries.

At trial, eyewitness testimony and physical evidence was presented to describe the murder. In camera, the State also offered three witnesses describing a previous fight and beating incident involving Parker, which took place in the same parking lot. Over the defense's objection, the trial judge allowed the State to submit this testimony to the jury. At the conclusion of the testimony and evidence, the jury convicted Parker of murder.

## LAW/ANALYSIS

 raises two issues of merit on appeal. The first is whether the trial judge erred in allowing the evidence

of the prior incident to reach the jury on the basis of common scheme or plan. The second is whether the trial judge erred in not charging the jury to resolve any reasonable doubt between manslaughter and murder in favor of the lesser offense.

We first addressed the issue of the admissibility in a criminal trial of evidence of prior bad acts in the landmark case of *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923). In *Lyle*, we held that:

> [the] evidence of other crimes is competent to prove the specific crime charged when it tends to establish, (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; or (5) the identity of the person charged with the commission of the crime on trial.

*Id.* at 416, 118 S.E. at 806.

Since our original decision in *Lyle*, the issue has amassed a long history. To gain a better understanding of the rule, it is helpful to examine some of our more recent decisions which elaborate on the *Lyle* common scheme or plan exception. In *State v. Rivers*, 273 S.C. 75, 254 S.E. (2d) 299 (1979), we held that there must be a connection between the prior bad act and the present crime. We then clarified this rule in *State v. Stokes*, 279 S.C. 191, 304 S.E. (2d) 814 (1983), where we held that the connection between the prior bad act and the crime must be more than just a general similarity.

In *State v. McClellan*, 283 S.C. 389, 323 S.E. (2d) 772 (1984), we adopted an "enhancement of the probative value test." This test requires the trial court to balance the probative value of the evidence against its prejudicial effect, and where the evidence is of such a close similarity to the charged offense that the previous act enhances the probative value of the evidence so as to "overrule the prejudicial effect," it is admissible. *Id.* at 392, 323 S.E. (2d) at 774. In *State v. Hallman*, 298 S.C. 172, 379 S.E. (2d) 115 (1989), we examined the degree of similarity between the prior bad act and the crime charged. The analysis adopted in *Hallman* was a clarification of the *McClellan* enhancement test.

Another parameter placed on all *Lyle* exceptions was explained in *State v. Smith*, 300 S.C. 216, 387 S.E. (2d) 245

(1989). In *Smith*, we noted that clear and convincing proof of a defendant's prior bad act was required for evidence to be admissible. *Id.; State v. Drew*, 281 S.C. 440, 316 S.E. (2d) 367 (1984). In *State v. Bell*, 302 S.C. 18, 393 S.E. (2d) 364 (1990), the appellant asked us to limit the *Lyle* exceptions by finding that the prior bad acts were only admissible if they were necessary. We rejected this analysis and equated necessary with relevant. *Id.* At the same time, we also affirmed the requirements for clear and convincing proof and, in the case of the common scheme or plan exception, a close degree of similarity or connection between the prior bad act and the crime. *Id.; see also State v. Douglas*, 302 S.C. 508, 397 S.E. (2d) 98 (1990) (where the Court refused to allow an unrelated bad act to be admitted under a *Lyle* exception).

In the case at bar, the evidence of the prior bad acts submitted by the State was of a general similarity to the beating death of Gwin. In viewing the record, it is difficult to narrow the similarities or draw a real connection between the incidents. In *State v. Bell, supra,* the prior bad act was interconnected with the crime and clearly supported a common scheme or plan. Here, no such correlation exists. Just as in *State v. Stokes, supra,* the present facts only support a general similarity, and thus are insufficient to support the common scheme or plan exception. The admission of the prior incident was, therefore, an evidentiary error.

In *State v. Livingston,* 282 S.C. 1, 317 S.E. (2d) (1984), a similar admission of prior bad acts evidence, in mistaken reliance on *Lyle,* was held to be harmless error. In *Livingston,* we held that when guilt is conclusively proven by competent evidence, such that no other rational conclusion could be reached, then we would not set aside a conviction for insubstantial errors not affecting the result. *Id.; See also State v. Bailey,* 298 S.C. 1, 377 S.E. (2d) 581 (1989); *State v. Key,* 256 S.C. 90, 180 S.E. (2d) 888 (1971).

Having found error, we must ask what other evidence was considered besides the evidence entered in error. The testimony of eye witnesses established that two of Parker's friends began beating Gwin in the parking lot, and that after Gwin was lying on the ground, Parker struck Gwin three times in the head with a baseball bat. The testimony described the sound the bat made when striking Gwin, and the fact that

the blows could be heard from thirty to fifty feet away. After the beating, the witnesses observed Parker and his friends attempting to hide the license plate of their vehicle and fleeing from the scene.

The pathologist testified that Gwin had two depressed skull fractures which caused his brain to swell and ultimately caused Gwin's death. The eye witnesses testified that Parker hit Gwin three times with the bat. The pathologist corroborated this testimony with forensic evidence that Gwin had been struck two or three times. The pathologist further testified that the skull fractures were consistent with a baseball bat rather than a fist.

The evidence of guilt is overwhelming without any reference to the evidence of the prior bad act. When the facts are analyzed against the standard enunciated in *Livingston*, *supra*, it becomes clear beyond a reasonable doubt that the erroneous admission of prior bad acts evidence in reliance on *Lyle* is not reversible error.

As a second issue, Parker asserts that the trial judge should have charged the jury to resolve any reasonable doubt between manslaughter and murder in favor of the lesser offense. In *State v. King*, 158 S.C. 251, 155 S.E. 409 (1930), we established the requirement that where murder and manslaughter are both submitted to the jury as possible verdicts, the jury must be instructed to resolve doubt in favor of the lesser charge. In *King*, the trial judge's charge had the effect of intimating guilt of murder to the jury while eliminating any potential for the lesser-included offense. We stated that:

> [t]he charge did not clearly and correctly instruct the jury, that if they had a reasonable doubt as to whether the appellant was guilty of murder or manslaughter, it was their duty to resolve the doubt in his favor, and find him guilty of the lesser offense.

*Id.* at 297, 155 S.E. at 426.

In *State v. Patrick*, 289 S.C. 301, 345 S.E. (2d) 481 (1986), *overruled on other grounds by Casey v. State*, 305 S.C. 445, 409 S.E. (2d) 391 (1991), we held that even where the facts clearly indicated that a *State v. King* charge should be given when requested, it was not error for the trial

judge to refrain from giving it *sua sponte*. *Id*. In *Patrick*, the judge instructed the jury that the State had the burden of establishing each element of the offense beyond a reasonable doubt, and if the State failed in this burden, then the jury could not find the defendant guilty of murder. *Id*.

In the present case, the trial judge adequately charged the jury with both murder and manslaughter. Prior to allowing the jury to commence their deliberations, the judge asked:

> [b]efore I send them out anything further from the State?
> MR. MABRY: No, Sir.
> MR. THOMASON: Unanimous verdict, Your Honor.
> THE COURT: Sir?
> MR. THOMASON: Unanimous verdict, Your Honor.
> THE COURT: Yeah. I told them that. It must be unanimous. All 12 must agree. I am going to keep you here. All 12 must agree. Anything further from the State?
> MR. MABRY: No, sir.
> THE COURT: Anything further from the defense?
> MR. THOMASON: No, sir, Your Honor.

There is no indication in the record that a *State v. King* charge was ever requested by the defendant, and further, the defense did not object to the charges where were given to the jury. More importantly, there was actually no need for the trial judge to submit manslaughter to the jury as a possible verdict. In fact, the trial judge was probably overly fair in submitting the manslaughter charge to the jury. We have held that it is not error for a trial judge to refuse a lesser-included offense instruction, where no evidence exists which supports the assertion that a lesser crime was committed. *State v. Mickle*, 273 S.C. 71, 254 S.E. (2d) 295 (1979); *State v. Funchess*, 267 S.C. 427, 229 S.E. (2d) 331 (1976).

Manslaughter is a killing in sudden heat or passion upon a sufficient legal provocation. This record is utterly devoid of any evidence which suggests that Parker acted in sudden heat to defend himself. To the contrary, the record provides overwhelming evidence of malice and murder. Striking a victim with a baseball bat, in front of witnesses, after that person was rendered defenseless would clearly support a trial judge in refusing a manslaughter charge. Thus, since the *King*

charge that doubt should be resolved in favor of the lesser offense was not requested, since there was no duty on the court to *sua sponte* provide the charge, and since the charge was not warranted by the evidence, this issue is without merit.

Accordingly, for the reasons stated, the trial court is AFFIRMED.

HARWELL, C.J., and CHANDLER, FINNEY and MOORE, JJ., concur.