2462

The STATE Respondent v. Avery DAVENPORT, Appellant.
(467 S.E. (2d) 258)

Court of Appeals

*Assistant Appellate Defender Lisa T. Gregory,* of the *SC Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorneys General Rakale B. Smith* and *Caroline E. Callison,* Columbia; and *Solicitor Walter M. Bailey, Jr.,* Summerville, *for respondent.*

Heard Nov. 7, 1995.

Decided Feb. 5, 1996.

CONNOR, Judge:

An Orangeburg County jury convicted Avery Davenport of criminal sexual conduct, first degree. The trial judge sentenced him to thirty years. Davenport appeals. We reverse and remand for a new trial.

## I. *Facts*

During December 1992 Valerie Dyches, the victim, lived with her sister, Cynthia McDonald, in a two-bedroom mobile

home in Orangeburg. Dyches did not personally know Davenport. Davenport got Dyches's phone number from the back of a picture she had given a mutual friend.

On December 4, 1992, Davenport called Dyches and she agreed to meet him at the local McDonald's. After meeting, they went to Dyches's house to watch television for awhile, then went to a nine o'clock movie and got something to eat before going back to Dyches's home. Because it was raining, Dyches and her sister allowed Davenport to sleep on the couch that night.

The next morning, Dyches planned to leave when her sister left for work. However, as soon as her sister left, Davenport pulled out a knife and forced Dyches to sit on the couch, repeatedly demanding that she make love to him. She refused at first, but, because she frightened, she eventually "was willing to do whatever he wanted to do because [she] was scared for [her] life." Davenport forced her to take her clothes off, and attempted to have intercourse, but he ejaculated prematurely on the couch. Dyches then got dressed, but Davenport, who was still holding the knife, continued to insist she make love to him. Dyches followed Davenport into the bedroom and removed her clothes.[1] She then told Davenport she had to use the bathroom, hoping to run out the back door. However, Davenport stood at the bathroom door and took her back to the bedroom. He again attempted to have sex with her, but could not have an erection. To "show [her] how much he loved [her]," he performed oral sex on her. Afterwards, he told her to wash herself and she went into the bathroom, washing only the side of her leg so that no evidence would be destroyed. Dyches then got dressed. When Davenport left, she ran to her neighbors. They took her to Orangeburg Regional Hospital, where a rape protocol examination was performed.[2]

---

[1] Dyches admitted she did not remember exactly where the knife was while they were in the bedroom.

[2] The state introduced no physical evidence concerning the results of this examination. Nor did the state take semen samples from the couch. Detective Williams, one of the investigating officers, testified there was no physical evidence linking Davenport to the victim.

## II. *Analysis*

### A. *Motion for Directed Verdict*

Davenport first argues the trial court erred in refusing to direct a verdict of acquittal in his favor. In reviewing the denial of a motion for directed verdict, we must view the evidence in the light most favorable to the state, *State v. Stokes*, 299 S.C. 483, 386 S.E. (2d) 241 (1989). Criminal sexual conduct first degree, is sexual battery using aggravated force or forcibly confining the victim. S.C. Code Ann. 16-3-652 (1985).

Davenport alleges the state failed to prove aggravated force because there was no evidence he had the knife or any other weapon in the bedroom. However, aggravated force includes "the threat of the use of a deadly weapon." S.C Code Ann. 16-3-651(c) (1985). There is abundant evidence, viewed most favorably to the state, that Davenport continued to threaten to use the knife. *See State v. Hamilton*, 276 S.C. 173, 276 S.E. (2d) 784 (1981) (evidence sufficient to prove criminal sexual conduct against the will of the victim where victim originally resisted, but stopped resisting when she realized "her life was on the line"). Accordingly, the trial judge did not err in refusing to direct a verdict in Davenport's favor.

### B. *Prior Bad Acts*

Davenport next argues the trial judge erred in admitting the testimony of Tylee Stephens. After an *in camera* hearing, the judge allowed Tylee Stephens to testify she had been sexually assaulted by Davenport in Newberry on October 11, 1989. In the Stephens case the state initially charged Davenport with both assault and battery with intent to kill and attempted criminal sexual conduct. He pleaded guilty to assault and battery of a high and aggravated nature, although his conviction was not mentioned in court in Dyches's case.

Stephens had never met Davenport until the night of the assault, but she had heard of him because he was related to her husband. According to her testimony, Davenport knocked on her door and asked to see her husband. She told him her husband was not at home. At that point he came inside anyway, and began making sexual advances. Eventually the two

struggled. Davenport got up, only to return with a butcher knife. After threatening to kill her, he dragged her into the bedroom and insisted she undress. Stephens asked him to take off his clothes first, and then told him she wanted to turn out the lights. Davenport undressed, and she ran to a neighbor's house. Davenport ran nude down the road to his car and drove away.

Evidence of prior crimes or misconduct is not admissible to prove the specific crime charged unless the submitted evidence tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial. *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923). The evidence must be carefully scrutinized before admission under one of the *Lyle* exceptions. As the Supreme Court stated in *Lyle*,

> Whether the requisite degree of relevancy exists is a judicial question to be resolved in the light of the consideration that the inevitable tendency of such evidence is to raise a legally spurious presumption of guilt in the minds of the jurors. Hence, if the court does not *clearly perceive* the connection between the extraneous criminal transaction and the crime charged, that is, its logical relevancy, the accused should be given the benefit of the doubt, and the evidence should be rejected.

*Id.* at 412, 118 S.E. at 807 (emphasis added) (citations omitted). The state maintains the evidence was properly admitted because it was offered to show a common scheme or plan. However, to be admissible under the common-scheme exception, the similarity or connection between the prior bad act and the current charge must be close. *State v. Parker*, 315 S.C. 230, 433 S.E. (2d) 831 (1993). Moreover, the probative value of the evidence must outweigh its prejudicial effect. *Lyle*.

The state argues the weapons used (knives in both instances) and the relationships of the parties (Davenport only tangentially knew both of the victims before the assaults) provide the degree of similarity necessary to bring Stephen's testimony within the *Lyle* exception. We cannot clearly perceive

the connection between the acts based on these criteria, and we therefore conclude Stephens's testimony should have been excluded. *See State v. Stokes*, 279 S.C. 191, 304 S.E. (2d) 814 (1983) (common scheme or plan exception requires more than mere commission of two similar crimes by the same person). The prejudice in this testimony is manifest, and therefore a new trial must be granted.[3]

Accordingly, we reverse and remand this case for a new trial.

Reversed and remanded.

SHAW and HEARN, JJ., concur.

---

[3] The state does not alternatively argue the error here is harmless.