488 S.E.2d 323

**The STATE, Respondent,**

v.

**Marcus TIMMONS, Appellant.**

**No. 24650.**

Supreme Court of South Carolina.

Heard April 15, 1997.
Decided July 21, 1997.

Assistant Appellate Defender M. Anne Pearce, of S.C. Office of Appellate Defense, Columbia, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy General Donald J. Zelenka, and Assistant Attorney General John P. Riordan, Columbia, and Solicitor Donald V. Myers, Lexington, for respondent.

MOORE, Justice:

Appellant was convicted of murder, two counts of armed robbery, two counts of criminal conspiracy, four counts of pointing a firearm, assault and battery of a high and aggravated nature, possession of a firearm during an armed robbery, and attempted armed robbery.[1]  We reverse.

## FACTS

On February 27, 1993, two men stole a car in Columbia and drove to the Cayce/West Columbia area.  They stopped at a Conoco station between 1:30 and 2:00 a.m.  The clerk was mopping the floor and had locked herself inside.  The two men, armed with guns, demanded the clerk let them inside.  The clerk refused and sought cover.  She testified at trial that one man wore a ski mask.

The two men then went to a laundromat at approximately 2:30 a.m.  Two women and a twelve-year-old boy were detained by the two men at gunpoint.  They robbed one of the women of her purse and car keys.  One of the women testified that one of the men wore a ski mask and the other had a bandanna over his mouth and a "Duke" hat.

At 3:00 a.m., the body of Thomas Wise was found lying beside Highway 321 near Cayce.  Wise had been shot and died shortly thereafter.

At 3:00 a.m., a Cayce police officer saw a robbery in progress in a convenience store.  He returned to the parking lot and saw two men carrying guns leaving the store.  The men climbed a fence behind the store and fled.  The officer

---

[1]. Appellant was sentenced to life for the murder and several other sentences ranging from 5 years to life plus 15 years, all to run consecutively.

testified one man wore a ski mask and the other a bandanna. The store clerk testified the two men had pointed guns but left before he could open the register. The clerk identified the ski mask, bandanna, and the two guns. The guns were found behind the store in the yard of a nearby residence. At 6:00 a.m., the police found the stolen car with its motor running in a parking lot near the convenience store. Inside the car, police found the purse taken from the woman at the laundromat and they found a fingerprint of Quincy Timmons (Quincy), appellant's cousin.

On April 9, 1993, appellant, Stacy Wright, and Quincy stole a mini-van from Richland County. The three men first robbed a Waffle House. A Waffle House employee testified that all three men wore ski masks and fired shots. A customer testified that one man wore a black ski mask and one wore a red bandanna. The three men then robbed a Pantry in the St. Andrews area. The Pantry employee testified that two men wore ski masks and one wore a bandanna or "something across his face." The video camera at the Pantry captured the robbery in progress and was introduced at trial.

Quincy pled guilty to all the charges stemming from February 27th and April 9th. He testified for the prosecution and his sentencing was deferred.[2] He testified that he and appellant had committed the crimes on February 27th and on April 9th. He testified that on February 27th appellant shot Wise. Quincy testified they had seen Wise walking on the opposite side of the road and pulled over and demanded money from him. Wise called Quincy a name and Quincy jumped out of the car and fought with Wise. Quincy testified appellant yelled for him to get out of the way and then appellant shot Wise.

Appellant was being tried for the February 27th crimes. Appellant testified and admitted he had participated in the events on April 9th. However, he denied any participation in the events on February 27th. The State sought to introduce evidence and testimony about the April 9th crime spree to prove common scheme or plan under *State v. Lyle,* 125 S.C. 406, 118 S.E. 803 (1923). Appellant objected. The trial judge allowed the State to introduce extensive evidence about the

---

2. Quincy was sentenced to life for the murder and several other sentences ranging from 1 year to 7 years on the other charges, all to run concurrently.

April 9th crimes. Appellant requested a limiting instruction regarding the bad acts admitted under Lyle. The trial judge denied appellant's request.

## ISSUES

1) Did the trial court err in admitting evidence of the crimes which occurred on April 9th as evidence of a common scheme under Lyle?

2) Did the trial court err in refusing to give a limiting instruction as to the Lyle evidence?

## DISCUSSION

1) Common Scheme

In the case of the common scheme or plan exception under *Lyle*, a close degree of similarity or connection between the prior bad act and the crime is necessary. *State v. Parker*, 315 S.C. 230, 433 S.E.2d 831 (1993). *See also State v. Douglas*, 302 S.C. 508, 397 S.E.2d 98 (1990). The connection between the prior bad act and the crime must be more than just a general similarity. *State v. Stokes*, 279 S.C. 191, 304 S.E.2d 814 (1983). A common scheme or plan concerns more than the commission of two similar crimes; some connection between the crimes is necessary. *Id.*

Evidence of other crimes must be put to a rather severe test before admission. The acid test of admissibility is the logical relevancy of the other crimes. The trial judge must clearly perceive the connection between the other crimes and the crimes charged. *Lyle, supra.*

In *State v. Patrick*, 318 S.C. 352, 457 S.E.2d 632 (Ct.App. 1995), the court held evidence of other robberies, where the same disguises (gloves, wigs and bandannas), same tools (walkie-talkies and flashlights), and the same type of weapons were used, was sufficiently similar to be introduced under *Lyle*. Further, the court pointed to the fact that the telephone wires were cut in the same manner (a portion of the wire was removed-rather than simply cut) and, in both instances, the victims were lured outside of their homes by noises made by the robbers. The present case does not rise to the degree of similarity found in *Patrick*.

Here, the trial judge stated:

I can identify about seven areas of identity between the two and, that is, between the crimes with which Mr. Timmons is charged and between the April incident that the State seeks to introduce. One, of course, is an armed robbery which involved the use of weapons obviously. That is not enough. The fact there are two similar crimes is simply not enough. There are other elements though that are case specific. Here, in other words, that are specific to this case and to the April incident.

That is, one, there were shots fired. That would tend to separate it from the general pattern of armed robberies. It is more specific in that these took place basically in the general Cayce/West Columbia area. As I understand, the testimony also will indicate that they both took place with the defendant and his cousin, Mr. Quincy Timmons.

There is a close proximity in time, a five-week period. It appears to be about five weeks between the two. Also it is more specific in the sense that they both involved multiple armed robberies in the same night. Also there will be testimony that there was the use of some same elements of clothing. Particularly noted by the solicitor were the ski mask, the hat, and bandanna.

Reviewing this list of similarities, we disagree with the trial judge. The only point of similarity with any merit is the alleged similar clothing worn by the robbers. During the February 27th robberies, the general consensus of the witnesses was that one robber wore a ski mask and the other a bandanna or something over his face. The testimony of the witnesses to the April 9th crimes was inconsistent in regard to the clothing worn by the robbers. There was no definite identifying article of clothing worn on both nights. Further, none of the witnesses was able to identify appellant or the other men.[3] We find there is insufficient similarity between the two crime sprees to prove a common scheme or plan under *Lyle*.

Furthermore, when admitting evidence of other crimes pursuant to *Lyle*, the probative value of the evidence

---

**3.** In its brief, the State lists several additional similarities: the crime spree began late at night; February 27th and April 9th were weekend nights; more than one participant committed each crime; the common goal of the crimes was to attain money or valuables; all-night establish-

must outweigh its prejudicial effect. *Parker, supra.* Whether appellant suffered prejudice must be ascertained on the basis of the entire record. *State v. Johnson,* 293 S.C. 321, 360 S.E.2d 317 (1987). Considering the volume of the testimony and evidence presented about the April 9th crimes, as well as the solicitor's repeated references to it in his arguments,[4] "it can be ascertained with reasonable certitude that the prejudicial impact of the excessively detailed evidence presented concerning appellant's prior crimes outweighed its probative value." *Johnson,* 293 S.C. at 326, 360 S.E.2d 317. Accordingly, we hold the trial judge erred in allowing the State to introduce this evidence.

### 2) Limiting instruction

■ Appellant contends the trial judge erred in denying his request to give the jury a limiting instruction regarding the *Lyle* evidence. We agree and address this issue because of the confusion surrounding when a limiting instruction regarding *Lyle* is required.

■ The State contends this issue is not preserved because appellant did not submit a written request to the trial judge. We disagree. A written request is not required. *State v. Simmons,* 308 S.C. 80, 417 S.E.2d 92 (1992). The State then contends appellant did not distinctly state what instruction he wanted. This argument also has no merit. It is clear appellant wanted an instruction limiting the use of the *Lyle* evidence.

■ On the merits, the general rule is that when evidence of other crimes is admitted for a specific purpose, the judge is

---

ments were targeted; customers in the stores were also robbed; and the stolen cars were recovered bearing "fruits of the crimes." These features are too general. There were many armed robberies of all-night establishments in Richland and Lexington Counties on weekend nights during the time from February 27th and April 9th. The State also contends the fingerprint of Quincy which was found in both instances establishes the similarity of the crimes. This merely establishes that Quincy was involved in both crime sprees—not appellant—and this fact was already established because Quincy pled guilty to both.

**4.** The solicitor repeatedly referred to the common scheme of robbery and even replayed the video of the April 9th robbery of the Pantry again during his closing statements.

required to instruct the jury to limit their consideration of this evidence for the particular purpose for which it is offered. See *State v. Steadman*, 216 S.C. 579, 59 S.E.2d 168 (1950).

In *State v. Johnson*, 306 S.C. 119, 410 S.E.2d 547 (1991), we held evidence of another crime formed part of the res gestae and was directly related to the murder. We concluded the failure to give a limiting instruction did not constitute reversible error because the other crime was directly related to the crime for which the defendant was on trial. In *State v. Nix*, 288 S.C. 492, 343 S.E.2d 627 (Ct.App.1986), the court held that a limiting instruction is unnecessary when evidence of the other crime is admissible on the main issue or the evidence is admitted to show motive or intent and the prior bad acts may have been committed in furtherance of such motive or intent. *Nix* and *Johnson* are distinguishable. In *Nix* and *Johnson*, the prior bad act evidence was being admitted as part of res gestae of the offense for which the defendant was charged. Here, the evidence regarding the April 9th incidents was not part of the res gestae of the February 27th robberies and murder. The evidence was offered to prove only a common scheme or plan. Therefore, the trial judge erred in refusing to give the requested limiting instruction.

REVERSED.

TOAL, Acting C.J., WALLER and BURNETT, JJ., and GEORGE T. GREGORY, Jr., Acting Associate Justice, concur.