580 S.E.2d 186

**The STATE, Respondent,**

v.

**Danny Ray TUTTON, Appellant.**

**No. 3630.**

Court of Appeals of South Carolina.

Submitted Jan. 10, 2003.

Decided April 21, 2003.

Rehearing Denied May 22, 2003.

320

Assistant Appellate Defender Aileen P. Clare, of Columbia; for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Senior Assistant Attorney General Harold M. Coombs, of Columbia; Solicitor William Townes Jones, of Greenwood; for Respondent.

HEARN, C.J.:

Danny Ray Tutton was indicted for second-degree criminal sexual conduct (CSC) with a minor, and two counts of lewd act on a minor. A jury found him guilty as charged, and he was sentenced to twenty years confinement on the CSC charge, a consecutive term of fifteen years for the first lewd act, and an additional consecutive term of fifteen years for the second lewd act, which was suspended upon the service of five years probation. Tutton appeals, arguing the trial judge erred by admitting evidence of uncharged criminal conduct under the common scheme or plan exception to *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923), and Rule 404(b), SCRE.

## I. FACTS AND PROCEDURAL HISTORY

In July of 2000, Tutton's live-in girlfriend, Tammy, invited thirteen-year old Mary and her younger sisters, Jane[1] and Tanya,[2] to Tutton's home for several days to play with Tammy's daughter, Sarah. During the stay, the girls, Tammy, and Tutton spent the days picnicking, washing Tutton's truck, and swimming in the river and in Tutton's pool. The charges facing Tutton arose out of the following contested facts.

The first night, all four girls slept on the floor by Tutton's bed. Jane testified that while she was sleeping, Tutton began rubbing her "butt." She alleged that after she rolled over, Tutton was able to reach under the covers and put his hands inside her shorts to rub her private parts. Jane further stated "He stuck his fingers inside of me." After Tutton fell asleep, Jane left the room.

On the second night, Tutton was sleeping on the couch while the girls were sleeping on a pallet of blankets placed on the floor nearby. Mary testified that while Tutton was lying on the couch, he began to touch her "butt" outside the covers. When she turned over, he touched her "private part." Mary stated she kept the blankets tightly around her, and therefore, Tutton was unable to reach underneath them. After Mary pinched her sister to move over, she moved out of Tutton's reach and the touching stopped.

The allegations surfaced after the girls' father, Chris, became suspicious that something might have happened during their stay at Tutton's home. He became concerned because the girls were acting quiet and withdrawn upon returning home and did not kiss him goodnight as they always had done. Chris testified that the next day, he asked the girls if "anybody bothered [them] or did anything they shouldn't have?" The girls both indicated that Tutton had "put his hands" on them. Thereafter, the authorities were notified.

Because of the alleged penetration, Jane saw a pediatrician trained in sexual abuse cases. The doctor performed a genital examination with the aid of a colposcope. The exam revealed

---

1. Jane is approximately one year younger than Mary.

2. The names of these three children have been changed in this opinion to protect their identities.

no evidence of trauma. However, the doctor testified that while the results of the exam could not prove penetration had occurred, it was possible that digital penetration could have occurred without Jane's hymen showing any evidence of trauma.

The issue in this case arose during Jane's testimony before the court. During its direct examination, the State sought to elicit testimony that Tutton had sexually assaulted Jane on another occasion several years prior to the events in question. Counsel for Tutton objected, arguing the testimony amounted to inadmissible character evidence. Outside the presence of the jury, the State proffered Jane's testimony as to the prior occurrence.

Jane testified that four or five years prior to the time of trial, Tutton sexually assaulted her. The assault allegedly occurred when she and Mary were staying with Tutton and Tammy while their parents were on vacation. Jane testified that Tutton forced her to lie on her back and take off her panties. She stated Tutton then performed oral sex on her and forced her to perform oral sex on him. She alleged that Tutton threatened to tell her parents she was misbehaving if she spoke of the incident. Jane never told anyone about this incident prior to the investigation into the current charges facing Tutton.

The trial court ruled this evidence was admissible under the common scheme or plan exception to *Lyle*. Specifically, the trial court found that Jane's testimony regarding the past misconduct was clear and convincing, and that the prior acts bore a close similarity to the crimes charged; thus the probative value of the evidence was not outweighed by its prejudicial effect. The testimony was thereafter presented to the jurors, who ultimately convicted Tutton.

## II. LAW/ANALYSIS

Evidence of prior crimes or misconduct is inadmissible to prove the specific crime charged unless the evidence tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the proof of the other; or

(5) the identity of the person charged with the present crime. *See Lyle,* 125 S.C. at 416, 118 S.E. at 807; Rule 404(b), SCRE. To be admissible, a prior bad act must first be established by clear and convincing evidence. *State v. Beck,* 342 S.C. 129, 536 S.E.2d 679 (2000); *State v. Weaverling,* 337 S.C. 460, 468, 523 S.E.2d 787, 791 (Ct.App.1999) (stating if a prior bad act is not the subject of a conviction, proof thereof must be by clear and convincing evidence).

If the trial judge finds there is clear and convincing evidence that the defendant committed the uncharged acts, it must next be determined whether the prior acts fall within the common scheme or plan exception to *Lyle.* "A close degree of similarity or connection between the prior bad act and the crime for which the defendant is on trial is required to support admissibility under the common scheme or plan exception." *State v. Cheeseboro,* 346 S.C. 526, 546, 552 S.E.2d 300, 311 (2001). The connection must be more than just a general similarity. *State v. Timmons,* 327 S.C. 48, 52, 488 S.E.2d 323, 325 (1997). "A common scheme or plan involves more than the commission of two similar crimes; some connection between the two is necessary." *Id.* Where the evidence of the bad acts is so similar to the charged offense that the previous act enhances the probative value of the evidence so as to outweigh its prejudicial effect, it is admissible. *Weaverling,* 337 S.C. at 468, 523 S.E.2d at 791. However, even if the evidence is clear and convincing and falls within a *Lyle* exception, the trial judge must exclude it if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. *Id.*

### A. Clear and Convincing Evidence

When considering whether there is clear and convincing evidence of other bad acts, this court is bound by the trial judge's factual findings unless they are clearly erroneous. *State v. Wilson,* 345 S.C. 1, 6, 545 S.E.2d 827, 829 (2001) (finding the appellate court committed error by basing its ruling on its own view of the witness's credibility). In this case, there is evidence in the record in the form of Jane's proffered testimony that the prior assault occurred. The determination of a witness's credibility must be left to the trial judge who saw and heard the witness and is therefore in a

better position to evaluate his or her veracity. *State v. Rosier*, 312 S.C. 145, 149, 439 S.E.2d 307, 310 (Ct.App.1993). Accordingly, the determination as to whether Jane's testimony clearly and convincingly established that the prior assault occurred is a matter well within the trial court's discretion. We find no abuse of that discretion in light of Jane's proffered testimony. *Wilson*, 345 S.C. at 6, 545 S.E.2d at 829.

### B. Common Scheme or Plan Exception

Having found that the record supports the trial judge's ruling that Tutton committed the prior bad act, we must next determine whether the evidence falls within the common scheme or plan exception to *Lyle*. Initially, we note that no South Carolina cases expressly state the standard of review for determining whether the evidence presented at trial is sufficient to establish the existence of a common scheme or plan. Ordinarily, questions concerning the admissibility of evidence are treated as questions of fact. *Wilson*, 345 S.C. at 6, 545 S.E.2d at 829. However, there are several cases in which the trial judge's admission of evidence under the common scheme or plan exception was reversed after the appellate courts in South Carolina found that the similarities between the charged and uncharged acts were insufficient to establish the existence of such a plan or design. *See State v. Timmons*, 327 S.C. 48, 53, 488 S.E.2d 323, 326 (1997) ("Reviewing this list of similarities, we disagree with the trial judge. The only point of similarity with any merit is the alleged similar clothing worn by the robbers."); *State v. Berry*, 332 S.C. 214, 503 S.E.2d 770 (Ct.App.1998) (*cert. denied*, June 24, 1999) (reversing the trial judge's admission of the evidence under the common scheme or plan exception after finding insufficient similarities between the separate attacks); *State v. Davenport*, 321 S.C. 134, 467 S.E.2d 258 (Ct.App.1996) ("We cannot clearly perceive the connection between the [separate] acts based on these criteria, and we therefore conclude [the witness's] testimony should have been excluded."). Certainly, the factual determination as to whether the prior assault occurred in this case is left to the discretion of the trial judge. However, in light of these authorities, we believe the determination of whether the facts surrounding that assault sufficiently evidence a common

scheme or plan is a question of law. In *Lyle*, our supreme court stated:

> Whether evidence of other distinct crimes properly falls within any of the recognized exceptions noted is often a difficult matter to determine. The acid test is its logical relevancy to the particular excepted purpose or purposes for which it is sought to be introduced.... Whether the requisite degree of relevancy exists is a judicial question to be resolved in the light of the consideration that the inevitable tendency of such evidence is to raise a legally spurious presumption of guilt in the minds of the jurors. Hence, if the court does not clearly perceive the connection between the extraneous criminal transaction and the crime charged, that is, its logical relevancy, the accused should be given the benefit of the doubt and the evidence should be rejected.

*Lyle*, 125 S.C. at 416–17, 118 S.E. at 807.

The trial judge ruled the prior sexual assault on Jane was sufficiently similar to the charged crimes to justify admitting evidence of the prior assault under the common scheme or plan exception. We hold this was error.

### 1. Common scheme or plan in sex crime cases

When he ruled on the admissibility of the uncharged conduct, the trial judge expressly relied on the reasoning in *State v. McClellan*, 283 S.C. 389, 323 S.E.2d 772 (1984), and *State v. Weaverling*, 337 S.C. 460, 523 S.E.2d 787 (Ct.App.1999). These cases support the contention that the common scheme or plan exception to *Lyle* is often satisfied in criminal sexual conduct cases because the evidence tends to prove the defendants engaged in patterns of continuous illicit conduct.

In *Weaverling*, the court stated, "[t]he common scheme or plan exception 'is generally applied in cases involving sexual crimes, where evidence of acts prior and subsequent to the act charged in the indictment is held admissible as tending to show *continued illicit intercourse* between the same parties.'" 337 S.C. at 469, 523 S.E.2d at 791 (quoting *State v. Whitener*, 228 S.C. 244, 265, 89 S.E.2d 701, 711 (1955)) (emphasis added). In *Weaverling*, the defendant allegedly performed fellatio on the same victim almost every time the two were together for a period of five or six years. The victim testified that he had

been assaulted by the defendant in excess of one hundred times. This court found the defendant's pattern of continuous sexual abuse satisfied the common scheme or plan exception. *Id.* at 469, 523 S.E.2d at 791.

Likewise, in *McClellan*, the defendant repeatedly engaged in sexual misconduct with each of his three daughters. All of the assaults began around the girls' twelfth birthdays, the defendant always quoted Bible verses to the girls, and he always gave the same excuses for his actions. The trial judge found the evidence in the case established a pattern of continuous illicit conduct, and admitted the evidence under the common scheme or plan exception. *McClellan*, 283 S.C. at 392, 323 S.E.2d at 774.

We interpret these cases to suggest that common scheme or plan evidence in criminal sexual conduct cases will be admitted on a generalized basis only where there is a pattern of continuous illicit conduct. Sex crimes may be unique in this respect because they commonly involve the same victims engaged in repeated incidents occurring under very similar circumstances. The reason for the general admissibility of such evidence under these circumstances is self evident— where there is a pattern of continuous conduct shown, that pattern clearly supports the inference of the existence of a common scheme or plan, thus bolstering the probability that the charged act occurred in a similar fashion.

However, *Weaverling* and *McClellan* do not lower the bar for admissibility under *Lyle* simply because sexual crimes are involved. Regardless of the nature of the charges facing the defendant, there must be evidence that the defendant employed a common scheme or plan in the commission of the crimes. Where there is a pattern of continuous misconduct, as commonly found in sex crimes, that pattern supplies the necessary connection to support the existence of a plan. Presumably, this is so because the same evidence that establishes the continuous nature of the assaults will generally suffice to prove the existence of the common scheme or plan as well. In *Weaverling* and *McClellan*, the sheer volume of repeated occurrences, together with the close similarities in the assaults, evidenced a pattern of continuous illicit conduct. Accordingly, these cases fall squarely within the plain meaning of

common scheme or plan evidence. *McClellan*, 283 S.C. at 392, 323 S.E.2d at 774 (stating it would be difficult to conceive of evidence more within the common scheme or plan exception); *Weaverling*, 337 at 469, 523 S.E.2d at 791 (stating the pattern of sexual abuse represented "quintessential common scheme or plan evidence").

*Weaverling* and *McClellan* involved longstanding histories of continuous abuse between the same parties. However, such is not necessary to find common scheme or plan evidence. For example, in *Whitener*, the defendant had nonconsensual intercourse with the victim at a hotel room, left the scene with the victim, and returned with the victim shortly thereafter to perform oral sex on her in the same room. In the State's prosecution for rape, the court allowed testimony regarding the subsequent oral sex act on the basis that this uncharged act was part of the same "continued illicit intercourse between the same parties." *Whitener*, 228 S.C. at 265, 89 S.E.2d at 711. The continuous nature of the illicit conduct in *Whitener* is established by the fact that the separate assaults occurred during the same series of continuous events on the day in question. The court found the evidence tended to "establish a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tend[ed] to establish the other[]." *Id.* (finding that the oral sex act performed shortly after the rape was relevant to the proof of the rape charge because it tended to explain the absence of spermatozoa on the victim).

However, the suggestion that common scheme or plan evidence will generally be admitted in cases involving patterns of continuous misconduct is misleading. The court must still clearly perceive the same logical relevance of the extraneous acts to the charged offense. Where the evidence discloses a pattern of continuous illicit conduct, as in *Weaverling*, for example, the logical relevance is apparent and the evidence will generally be admitted. In *Whitener*, the uncharged act was logically relevant to the charged offense because both acts arose from a single, continuous series of events, and proof of one act tended to establish that the other had occurred.

Here, we are compelled to find there is no pattern of continuous illicit conduct similar to that found in *Weaverling*

and *McClellan.* Therefore, we believe the trial judge erred to the extent he based his ruling on the reasoning of these cases. Furthermore, *Whitener* does not reconcile the trial judge's reasoning because there is no continuous series of events tying the uncharged act to the charged offenses in the present case. To the extent we find there is no continuous illicit conduct in this case, we do so only to distinguish the present case from the authorities relied on by the trial judge. It goes without saying that the conduct need not be continuous to fall within the common scheme or plan exception. In this case, there is no continuous conduct, but that fact, standing alone, does not preclude the existence of a scheme or plan. Instead, the determination of the admissibility of the uncharged act rests solely on whether the requisite degree of similarity between the separate acts is present in this case. *Lyle,* 125 S.C. at 416–17, 118 S.E. at 807; *see also State v. Rogers,* 293 S.C. 505, 362 S.E.2d 7 (1987) (rev'd on other grounds by *State v. Schumpert,* 312 S.C. 502, 435 S.E.2d 859 (1993)) (refusing to allow testimony regarding uncharged sexual intercourse under the common scheme or plan exception where the charged assault involved only "touching").

## 2. The logical relevance of Tutton's uncharged acts

In this case, as with many criminal sexual conduct cases, the question before the jury is not whether the State has charged the correct person with the crime; instead, the question is whether the charged crime actually occurred. The purpose of admitting evidence of other instances of sexual misconduct under the common scheme or plan exception is to bolster the probability that the charged acts occurred. *See* 2 Wigmore on Evidence § 304 (Chadborne rev. ed.1979) (stating that where the evidence is introduced to prove the existence of a plan, the purpose "is to show (by probability) a precedent design which in turn is to evidence (by probability) the doing of the act designed."). Here, if the evidence suggests Tutton's prior abuse of Jane was part of an overall plan or scheme devised by him to perpetuate the type of misconduct that occurred, it is relevant to prove the charged assaults on Jane and Mary occurred. *Id.*

Where such a plan exists, the charged and uncharged acts represent individual achievements of the purposes for which

the plan was established. *See* 2 Wigmore, § 304 (stating that where separate offenses are sufficiently similar, there is an inference that they are manifestations of a common scheme or plan). Accordingly, the evidence in such cases speaks to the existence of the defendant's plan, not to the defendant's character. This is so because the jury is not asked to draw an inference that the prior bad acts would evince the defendant's propensity to commit the charged offenses; instead, the jury is asked to infer that the defendant developed a criminal scheme and employed that scheme as probative evidence that the charged acts occurred. *People v. Sabin*, 463 Mich. 43, 614 N.W.2d 888, 900, n. 10 (2000). "The logical relevance of the evidence is based on the system, as shown through the similarities between the charged and uncharged acts, rather than on [the] defendant's character, as shown by the uncharged act." *Id.*

For purposes of analyzing evidence of prior misconduct under the common scheme or plan exception, we believe it is crucial to distinguish similarities that merely link the two crimes from those similarities that tend to paint the broader, more relevant picture. Where, for example, the similarities are used to prove only the defendant's intent, very little is required because the charged act in such cases is assumed done. 2 Wigmore, § 304. However, "where the very act is the object of proof, and is desired to be inferred from a plan or system, the combination of common features that will suggest a common plan as their explanation involves so much higher a grade of similarity as to constitute a substantially new and distinct test." *Id.* "The added element, then, must be, not merely a similarity in the results, but *such a concurrence of common features that the various acts are normally to be explained as caused by a general plan of which they are the individual manifestations.*" *Id.* (emphasis in original).

In this case, there are similarities between the charged offenses and the prior alleged assault. First and foremost, the incidents involve the same parties. Also, both the prior uncharged assault on Jane and the charged offenses took place while she and her sisters were staying at Tutton's residence.[3]

---

**3.** Regarding the charged offenses, there was detailed testimony as to where the victims and Tutton were lying and as to how Tutton com-

Importantly, however, the separate offenses are dissimilar in several significant ways. First, the uncharged assault on Jane is dissimilar in that it was more egregious than the assaults for which Tutton was charged. In *Rogers*, the victim and her sister both testified that the defendant had "touched" them. In addition, the sister testified that the accused had sexual intercourse with her. Our supreme court held the testimony regarding the alleged intercourse was inadmissible. The court stated, "Even if the common scheme exception would have permitted the evidence of the prior touching,[4] the evidence of sexual intercourse would not have been within the scope of the common scheme. Its introduction was highly prejudicial." *Rogers*, 293 S.C. at 507, 362 S.E.2d 7. Likewise, we hold Jane's testimony regarding the alleged incidents of oral sex is highly prejudicial in light of the nature of the charged offenses. *See Weaverling*, 337 S.C. at 468, 523 S.E.2d at 791 (stating that even if the evidence falls within a *Lyle* exception, it must be excluded it if its probative value is substantially outweighed by its prejudicial effect).

The dissimilarities also include the fact that after the uncharged incident, Tutton allegedly threatened Jane that she would be in trouble if she told anyone. Neither girl received a similar warning after the charged assaults. In addition, unlike in the present case, Tutton apparently attempted no other assaults against the others at the time of the uncharged act. Moreover, there was a substantial period of time between the prior uncharged assault and the charged offenses.[5] The girls stayed with Tutton on several occasions during this interim, apparently without incident.

---

menced the assaults. This evidence was completely lacking as to the prior uncharged assault. Accordingly, there is little to aid this court in finding that similar tactics were employed by Tutton as to that incident.

4. We note the court also found insufficient similarities between the charged and uncharged offenses. *Rogers*, 293 S.C. at 507, 362 S.E.2d at 8. The only connection between the assaults, which were ten years apart, is that the accused touched both of his daughters. *Id.*

5. Remoteness in time, however, is not dispositive. *State v. Blanton*, 316 S.C. 31, 33, 446 S.E.2d 438, 440 (Ct.App.1994) (*cert. denied*, March 9, 1995) (admitting testimony from sufficiently similar assaults that occurred seven to eight years prior).

When ruling on the evidence, the trial judge expressed his initial concern about the substantial gap in time between the incidents, but apparently put his concerns to rest in light of his understanding that Tutton had moved away during the interim. However, the trial judge apparently based this ruling on incomplete facts—it was more than two years after the first incident occurred when Tutton moved away from the neighborhood. Significantly, the victims stayed with Tutton several times during the period between the alleged assaults. The fact that no other incidents occurred during these interim visits weakens the State's contention that Tutton acted pursuant to a plan of sexually assaulting the victims when they spent the night at his house. Certainly, it is not necessary that Tutton assaulted the victims on every occasion to establish a common scheme or plan, but there must be sufficient evidence connecting the overnight stays to the alleged assaults to clearly indicate that a scheme or plan is in use.

The balancing of the similarities in cases concerning the admission of common scheme or plan evidence is a difficult task. While inferential leaps are at the heart of such decisions, we are compelled to find that the similarities in this case are insufficient to support the inference that Tutton employed a common scheme or plan to commit the assaults alleged in this case. As stated in *Lyle*, "if the court does not clearly perceive the connection between the extraneous criminal transaction and the crime charged, that is, its logical relevancy, the accused should be given the benefit of the doubt and the evidence should be rejected." *Lyle*, 125 S.C. at 417, 118 S.E. at 807; *see also State v. Henry*, 313 S.C. 106, 432 S.E.2d 489 (Ct.App.1993) (*cert. dismissed as improvidently granted*) (stating the defendant must be given the benefit of the doubt regarding the introduction of common scheme testimony where the admissibility was a close question).[6] Because we do

6. In *Sabin*, the Michigan Supreme Court gave deference to the trial judge's decision to admit the evidence because it believed reasonable minds could differ on the issue of its admissibility in what it considered to be a close case. South Carolina does not follow this approach. *Lyle* demands that the defendant be given the benefit of the doubt where the connection is not *clearly perceived. Lyle*, 125 S.C. at 417, 118 S.E. at 807. *See also, Henry*, 313 S.C. 106, 432 S.E.2d 489 (giving the accused the benefit of the doubt where the admissibility of the evidence is a close case). In any event, we find the common features in *Sabin,*

not clearly perceive the required connection, we hold the trial judge erred by admitting Jane's testimony about the uncharged assault under the common scheme or plan exception to *Lyle.*

█ Moreover, we believe the error in admitting this evidence was not harmless. Whether the improper introduction of evidence is harmless requires us to look at the other evidence admitted at trial in order to determine whether the defendant's guilt is conclusively established by competent evidence such that no other rational conclusion could be reached by the jury. *Berry,* 332 S.C. at 220, 503 S.E.2d at 773. Here, the evidence at trial consisted entirely of the victims' accusations against the defendant. The defendant vehemently denied the accusations and the medical evidence was inconclusive. Considering this contested evidence and the fact that the prior uncharged assault on Jane was more egregious than the charged offenses, we cannot say that without this testimony, the evidence before the jury was so overwhelming that a guilty verdict was the only rational conclusion. *Id.* at 221, 503 S.E.2d at 774. Accordingly, we reverse Tutton's conviction and remand for a new trial.

**REVERSED.**

GOOLSBY and SHULER, JJ., concur.

especially the defendant's tactic of playing on the victims' fears of breaking up the family in order to silence them, far more compelling than in the instant case. *See Sabin,* 614 N.W.2d at 901.