0606

The STATE, Respondent v. Martin A. NIX, Appellant, and The STATE, Respondent v. Rallie F. QUARLES, Appellant.

(343 S. E. (2d) 627)

Court of Appeals

*Asst. Appellate Defender Joseph L. Savitz, III, of S. C. Office of Appellate Defense,* Columbia, *for appellant Nix.*

*Asst. Appellate Defender Tara D. Shurling, of S. C. Office of Appellate Defense,* Columbia, *for appellant Quarles.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.* and *Amie L. Clifford,* Columbia, and *Sol. Donald V. Myers,* Lexington, *for respondent.*

Heard Oct. 22, 1985.

Decided Jan. 14, 1986.

GARDNER, Judge:

Rallie F. Quarles (Quarles) and Martin A. Nix (Nix) were tried and convicted of the offenses of armed robbery, kidnapping, and first degree criminal sexual conduct. The separate appeals of the defendants were consolidated on appeal for hearing and disposition. We affirm.

Sherry Casey, an employee of a Zippy Mart store in Lexington County, was the only employee on duty during the midnight to 4:00 a.m. shift. Casey indicated that after 2:30 a.m. two people whom she identified at trial as Quarles and Nix came into the store but left when a police officer drove up to the store. Later that night, Quarles returned to the

store. Casey asked if she could help him; he pointed something under his shirt at Casey and demanded all the money in the cash register. Casey admitted on cross examination that she did not see a gun. Thereafter Casey was forced by Quarles into the back seat of an automobile parked outside; she noticed a bar leaning across the rear passenger door of the automobile, which caused her to believe that she could not open the door. Nix drove the automobile to a wooded area where Quarles made her get out of the car and Nix raped her. Later Quarles forced her to perform oral sex and then raped her. During this time Nix and Quarles talked about whether they were going to kill Casey and told her that they were going to kill her. At any rate, they finally tied her hands and feet behind her back and left her nearly naked in the wooded area. She was able to free her legs and then ran to the home of Mrs. Judy Helms, who took her to the hospital and called the police.

At trial Mr. Thomas Donald testified that at approximately 2:30 a.m. on the same night of the above occurrences, he was parked in his automobile close to the Odyssey Club in Columbia when he was approached by a man matching Quarles' description who appeared to have a pistol under his shirt which he pointed at Mr. Donald's head and then ordered him from the car. When Donald got out of the car he noticed another man whose description was similar to that given by Casey of defendant Nix; Quarles threatened to kill Donald and told Nix to get his wallet and money. A struggle ensued in which Nix and Donald fought and struggled with each other. They were fighting at a point about 50 feet from Donald's car when the man fitting Nix's description called for Quarles to bring the gun, at which time Donald screamed, thus causing Nix to run to Donald's car and both assailants to flee in it.

At the time the car was stolen, there was a spare tire, a car jack and some nylon rope or line in the trunk; the nylon rope was "white" but "yellowish" in color and had been used by Donald to tie furniture on the car.[1]

---

[1] At trial Casey identified a rope that the defendants tied her with; however, the rope exhibit is not before this Court in order to corroborate it as being a "whitish yellowish" nylon rope.

About 6:00 a.m. the next morning, a Lexington County Deputy found Quarles and Nix walking on a rural road in Lexington County. He questioned them. Shortly thereafter, at about 7:00 a.m., the deputy arrested Quarles in a residence in West Columbia. While he was being transported to jail, Quarles told the deputy the he knew where a stolen car was; he said that the car had been stolen from the Odyssey Club, described it and told the deputy that the car had a flat tire; he gave the deputy the location of the car and also told the deputy that he had ridden in the car. Thereafter Donald's car was found where Quarles said it was. The officer who first examined the car saw a tire jack across the rear passenger door.

After being qualified as an expert, an officer testified that the treads of Donald's car tires were similar to the tire tracks found in the dirt road where the sexual assault had occurred and that either the tires from Donald's car made the tracks or tires precisely like them. Additionally, a fingerprint expert testified that latent fingerprints of Nix and Quarles were lifted from the exterior of Donald's car.

Attorneys for both Nix and Quarles made timely motions of request to make a limiting charge to the jury that the evidence of other crimes not contained in the indictment may be considered by them only if they find a common scheme, design or plan involved in the uncharged crime and the crimes charged in the indictment. The trial judge denied the request to charge.

At issue on appeal are whether (1) there was sufficient evidence to convict the defendants of armed robbery, (2) Donald's testimony was admissible, (3) the defendants were entitled to a charge limiting consideration of Donald's testimony only if it found a common scheme, design or plan connecting the stealing of Donald's car to the offenses charged.

Issues one and two are so interrelated that we address them together.

Evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that

proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial. *State v. Lyle*, 125 S. C. 406, 118 S. E. 803 (1923).

Evidence of other crimes must be put to a rather severe test before admission. The acid test of admissibility is the logical relevancy of the other crime to one of the above enumerated qualifications for admission. *It is a judicial question and the trial judge must clearly perceive the connection between the other crime and the crime or crimes charged. State v. Lyle, supra.*

The admissibility of evidence rests in the sound discretion of the trial judge and will not be disturbed by this court on appeal absent an abuse of discretion. *State v. Hogg*, 276 S. C. 226, 277 S. E. (2d) 592 (1981).

Putting ourselves in the position of the trial judge of this case, it is easy to concur with his ruling that Donald's testimony was admissible. The car theft occurred within a short time, approximately two hours, before the robbery. The car theft and the attendant circumstances and facts are so related to the charged crimes that they constitute evidence that there was a common scheme or plan between the crimes; they are so related to each other that the car theft is evidence of the armed robbery, kidnapping and rape. Without a get-away car, the robbery would have been unlikely; and even less likely would have been the ensuing kidnapping and rape. The relevancy of the car theft to the crimes charged is patent — easily perceived. We therefore hold that Donald's testimony was admissible.

Next, both Quarles and Nix moved for a directed verdict on the ground that there was insufficient evidence that Quarles was armed when he robbed Casey at the store. It is a well-established rule in criminal cases that unless there is a total failure of evidence tending to establish the charge laid in the indictment, the trial judge's ruling upon a motion for a directed verdict of acquittal must stand absent an error of law. *State v. Fogle*, 256 S. C. 149, 181 S. E. (2d) 483 (1971). Furthermore, in determining whether a motion for a directed verdict of not guilty should be granted in a criminal case, the evidence and all reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the State. *State v. Mickle*, 273 S. C. 71, 254 S. E. (2d) 295 (1979).

During the auto theft, Nix called to Quarles "bring ■ ■ the gun." In *State v. Lyle, supra,* the court said, "if it [the evidence of the other crime] is logically pertinent in that it reasonably tends to prove a material fact in issue, it is not to be rejected merely because it incidentally proves the defendant guilty of another crime." We hold therefore that the possession of the gun during the car theft was evidence of possession of the gun during the store theft;[2] this is pertinent and logically probative evidence of the charged crimes and we so hold. Nix's shout to bring the gun is tantamount to a statement that they had a gun. In both robberies the victims testified that Quarles pointed something under his shirt while robbing them. The test of logical pertinency is well met. We therefore hold there was no error committed by the trial judge in submitting the issue of armed robbery to the jury which resolved this issue in favor of the state.

The appellants next argue that the trial judge erred by failing after timely request to make a limiting charge in reference to the car theft testimony. This contention is based on the case of *State v. Smalls,* 260 S. C. 44, 194 S. E. (2d) 188 (1973); there the State introduced for impeachment purposes evidence of the conviction of Smalls for a crime involving moral turpitude. On appeal the Supreme Court held that Smalls, after timely request, was entitled to a jury charge limiting consideration of the other crime to its effect on Smalls' credibility. This is logical; we, however, do not believe that it was the intent of the Supreme Court to require a limiting charge upon request when there is introduced evidence of another crime for the purpose of using the other crime as evidence to prove a material fact of the charged crime; this is the case before us.

Some of the language of *Smalls,* quoting 23 C.J.S. *Criminal Law,* § 1032(3) (1979), indeed, would appear to require a limiting charge in all cases where evidence of other crimes is introduced; *but* then a study of the

---

[2] The offense of armed robbery occurs in this State when a person commits a robbery while armed with a deadly weapon. Section 16-11-330, Code of Laws of South Carolina (1976). This statute does not require display of the deadly weapon; and it should not, we think, because a robber would be thus encouraged to hide his deadly weapon to escape the increased punishment for armed robbery.

quoted paragraph from *Corpus Juris Secundum* reveals that the cited paragraph contains a subparagraph entitled "Limiting instructions unnecessary" which provides that a limiting charge is unnecessary where evidence of the other crime is admissible on the main issue or where the evidence admitted to show motive or intent is of acts which may well be supposed to have been done in furtherance or such motive or intent. Such was the case now before us. Casey testified that before the robbery and kidnapping Quarles and Nix visited the Zippy Mart but left when a police officer came on the scene. This visit might well have been designed to case the Zippy Mart. At any rate, it was during this same time period Donald's car was stolen. And it might well be supposed that the car theft was but a means of accomplishing the planned robbery, abduction and rape which occurred during Casey's graveyard shift. Remembering that *Lyle* holds that the admission of this type evidence is a judicial matter we have concluded that there was no error in the learned trial judge's refusal to make a limiting instruction. And we so hold.

For the reasons stated, the judgment below is affirmed.

Affirmed.

BELL and CURETON, JJ., concur.