500 S.E.2d 128

**The STATE, Respondent,**

**v.**

**James Barney WARREN, Appellant.**

**No. 2827.**

Court of Appeals of South Carolina.

Heard Sept. 10, 1997.

Decided April 13, 1998.

Rehearing Denied May 21, 1998.

Assistant Appellate Defender Robert M. Pachak, of SC Office of Appellate Defense, Columbia; and Francis X. McCann, Charleston, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General G. Robert DeLoach, III, Columbia; and Solicitor Walter M. Bailey, Jr., Summerville, for respondent.

CONNOR, Judge:

James Barney Warren appeals his conviction for second-degree criminal sexual conduct with a minor. We affirm in part, reverse in part, and remand.

## FACTS

In January 1994, fourteen-year-old Christy Chenault lived with her aunt and uncle, Mary and Raymond Garrison. Christy had been placed in relative custody foster care pursuant to a family court restraining order, which prohibited unsupervised contact between Christy and her mother and stepfather. The restraining order was put in effect after Christy's older sister, Brandy Nettles, alleged Warren had sexually abused her.[1] Warren is Christy and Brandy's stepfather. Warren and Christy's mother, Cheryl Warren, lived down the street from the Garrisons.

On January 15, 1994, Christy called her parents to ask for permission to attend a friend's birthday party. Christy and several other witnesses who attended the party testified Christy's mother, stepfather, and stepbrother picked her up at the Garrisons' house and drove her to the party.

Christy testified Warren called her friend's house around 9:00 p.m. and told her he was coming to pick her up. Christy and several other witnesses who attended the party testified Warren arrived alone at the house around 9:30 or 10:00 p.m. Warren then drove Christy to the house where he and Christy's mother were living.

Christy said Warren starting touching her that night while they were watching television. Warren then told her to stand up and undress in front of him. After Warren undressed, he had oral sex and sexual intercourse with her.

On May 10, 1994, Christy told her friend Christian Beasley about what had happened with Warren. The same day,

---

1. On November 18, 1993, the family court held a hearing to review whether the children should remain in foster care. By order dated January 5, 1994, the family court judge found the children, Christy, Brandy, and Christopher Warren, should remain in foster care because of the threat of sexual abuse. Pursuant to the order, Warren and his wife were prohibited from having any unsupervised contact with Christy and Christopher, and any contact with Brandy.

Christy called her aunt in Pennsylvania and then called Brandy. Christy's aunt called Marilyn Lassiter, a guardian ad litem, who instructed her to contact Christy's school guidance counselor and the police. Christy then spoke with Donna Hernandez, her guidance counselor, and told her what had happened with Warren. Hernandez reported the incident to the Dorchester County Department of Social Services (D.S.S.).

Christy was placed in foster care and eventually went to live with her aunt in Pennsylvania. She lived there until January 13, 1995, when she returned to South Carolina. Christy testified that while she was living in Pennsylvania, Warren called her and told her he still loved her and would not do it again.

In the early part of January 1995, while she was still living in Pennsylvania, Christy sent letters to D.S.S., the foster care review board, and family court Judge Watson. In each of these letters, Christy recanted her allegations of sexual abuse. Christy testified her parents told her where to send the letters. When Christy returned to South Carolina, she called Raymond Garrison. In the telephone conversation, which was taped by Garrison, Christy stated the allegations against Warren were false.

Zan Dickerson, an investigator with D.S.S., verified Christy had recanted her allegations of sexual abuse. Christy returned to her original allegations on May 18, 1995, just prior to attending a family court hearing. Christy stated she changed her story because she wanted to return home to be with her mother.

Warren testified he gave Christy permission to attend the party. However, Christy told him she would find a ride. He denied taking Christy to the party or picking her up. He claimed he spent the whole day and night of January 15, 1994, repairing a clothes dryer at home. He stated his wife left for work around 7:15 or 7:30 p.m. in her charcoal gray Honda Accord.[2] He denied ever sexually molesting Christy or his other stepdaughter, Brandy.

---

**2.** Several witnesses testified Warren dropped Christy off and picked her up in a dark colored compact car.

Christy's mother stated she arrived at work on January 15, 1994, at 7:38 p.m. in her Honda Accord. She denied telling Christy to write the letters in which Christy recanted her allegations of sexual abuse. Although Christy asked her to tell D.S.S. the allegations were false, she refused to do so. Instead, she told Christy she would have to contact D.S.S. on her own. Christy's mother claimed her mother's husband had actually molested Christy and Brandy.

Brandy testified she had made false allegations that Warren had raped her. She did this because she wanted the freedom to do what other teenagers were allowed to do. In a signed statement to the solicitor's office, dated June 23, 1994, Brandy stated she wanted to dismiss the charges she had made against Warren.

On June 6, 1994, D.S.S. filed a rule to show cause against the Warrens and the Garrisons for failure to comply with the family court order in effect. As to Warren, D.S.S. alleged he failed to comply with the order by sexually abusing Christy on January 15, 1994.

After a hearing, the family court judge found Warren in contempt. He sentenced Warren to one year imprisonment and ordered him to pay a fine of $1,500.

Subsequently, Warren was tried and convicted of second-degree criminal sexual conduct with a minor, based on the January 15, 1994 incident involving Christy.

## DISCUSSION

### I. Double Jeopardy

■ Warren argues his trial and conviction for second-degree criminal sexual conduct with a minor constituted double jeopardy. He contends he had already been punished for the same offense in family court when he was found in contempt.

At the conclusion of the family court contempt hearing, the judge orally ruled D.S.S. had proven by the preponderance of the evidence that Christy had been sexually abused by Warren. The judge separately addressed the issue of contempt. On this issue, the judge orally ruled as follows:

We do have the issue of contempt of court against Mr. Warren and against Mrs. Warren. Both of whom have been ruled into court for contempt for failing to comply with prior Restraining Orders that would not allow Mr. Warren to have unsupervised contact with this young lady....

I do find the burden of proof in a rule to show [cause] for violating the Restraining Order requires proof beyond a reasonable doubt because it is a criminal action. I do find that certainly the Department of Social Services has met the burden of proof and that certainly there is no reasonable doubt, and I find that Mr. Warren did violate that Restraining Order, that he and Mrs. Warren did go to the birthday party of Amanda with Christy and let her off. The Garrisons weren't present to supervise this contact, and that in of itself would have been pretty innocent type behavior.

However, Mr. Warren came back to the birthday party, alone, not accompanied by Mrs. Warren or the Garrisons, and picked Christy up and took Christy back to the home and sexually abused Christy. He certainly violated the Restraining Order.... The purpose of the initial Restraining Order against Mr. Warren was to protect the children, Christy and Brandy from any further abuse or abusive conduct by Mr. Warren. That was the whole reason for the Restraining Order for Mr. Warren not to have any unsupervised contact with this young lady here. He violated it, as a result, the young lady was sexually abused....

By written order dated June 9, 1995, the judge made the following findings of fact:

2. That the Plaintiff Agency met its burden of proof by more than a preponderance of the evidence that Defendant, James Warren, sexually abused the minor child, Kimberly Christy Chenault,....

4. That the Plaintiff Agency has met its burden of proof beyond a reasonable doubt the Defendant, James Warren, violated this Court's prior restraining order which prohibited him from having any contact with the minor child, Kimberly Christy Chenault, unless under supervision of Raymond Garrison.

5. That the purpose of this Court's prior restraining order was to protect the minor child, Kimberly Christy Chenault,

from possible sexual abuse, and the Defendant, James Warren's conduct in sexually abusing the minor child was in direct violation of this order.

6. That the Defendant, James Warren, is found to be in contempt of this court's order and should be confined to public works of Dorchester County or placed in other appropriate correctional facility for one (1) year and, upon release shall pay a fine of one thousand five hundred dollars ($1,500.00).

At trial, Warren moved to quash the indictment for criminal sexual conduct with a minor based on double jeopardy. Warren alleged he had already been punished and held in contempt of family court on the same charge. The trial judge denied the motion, finding the order was ambiguous. He noted the family court did not punish Warren for having sexual relations with Christy, but for violating the restraining order.

The Double Jeopardy Clause provides that "No person shall be ... subject for the same offence to be twice put in jeopardy of life or limb...." U.S. CONST. amend. V. The Fifth Amendment protects against a second prosecution for the same offense after conviction or acquittal, and against multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

In *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the United States Supreme Court stated:

The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

In *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), the United States Supreme Court expanded the *Blockburger* analysis, holding even if two successive prosecutions were not barred by the *Blockburger* test, "the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been

prosecuted." *Id.* at 510, 110 S.Ct. at 2087. In *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), the Supreme Court overruled the *Grady* same-conduct test, and returned to the original *Blockburger* test.

Recently, our Supreme Court addressed the impact of the United States Supreme Court's decision in *Dixon* on double jeopardy analysis under Article I, § 12 of the South Carolina Constitution.[3] *State v. Easler,* 327 S.C. 121, 489 S.E.2d 617 (1997). The Court concluded *Blockburger* is the only remaining test for determining a double jeopardy violation in both multiple punishment and successive prosecution cases. *Id.* at 132, 489 S.E.2d at 623.

Turning to the instant case, we are guided by a factually similar case, *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). In *Dixon,* the United States Supreme Court considered the consolidated appeals of Alvin Dixon and Michael Foster. Dixon was arrested for second-degree murder and was released on bond. Pursuant to Dixon's release form, he was not to commit "any criminal offense" and any violation of the conditions of release would subject him "to revocation of release, an order of detention, and prosecution for contempt of court." While awaiting trial, Dixon was arrested and indicted for possession of cocaine with intent to distribute. Following a rule to show cause hearing, the court found the Government had established beyond a reasonable doubt that Dixon was in possession of drugs with intent to distribute. The court found Dixon guilty of criminal contempt and sentenced him to 180 days in jail. At trial, Dixon moved to dismiss the cocaine indictment on the grounds of double jeopardy. The trial court granted the motion.

In *Foster v. U.S.,* 598 A.2d 724 (1991), after allegedly attacking his estranged wife, a civil protection order (CPO) was put into effect, which required that Foster not "molest, assault, or in any manner threaten or physically abuse" his wife. A hearing was held after Foster's wife filed several motions to have Foster held in contempt for numerous violations of the CPO. The court found Foster guilty beyond a reasonable doubt of four counts of criminal contempt and

---

3. S.C. Const. art. I, § 12 provides in part, "No person shall be subject for the same offense to be twice put in jeopardy of life or liberty. . . ."

acquitted him on other counts. Foster was sentenced to 600 days imprisonment. Subsequently, Foster was indicted for simple assault, threatening to injure another, and assault with intent to kill. The charges were based on the events for which Foster had been held in contempt. Foster filed a motion to dismiss on the grounds of double jeopardy and collateral estoppel. The trial court denied the double jeopardy claim and did not rule on the collateral estoppel claim.

The District of Columbia Court of Appeals consolidated the two cases and held both subsequent prosecutions were barred by the Double Jeopardy Clause.

On appeal, the United States Supreme Court considered whether the Double Jeopardy Clause barred prosecution of a defendant on substantive criminal charges based upon the same conduct for which he previously had been held in criminal contempt of court. *Dixon*, 509 U.S. at 694, 113 S.Ct. at 2854–55.

As a threshold matter, the Court held the protection of the Double Jeopardy Clause applies to nonsummary criminal contempt prosecutions as it does in other criminal prosecutions. *Id.* at 696, 113 S.Ct. at 2855–56. Justice Scalia, writing for the Court in a 5–4 decision, went on to overrule the *Grady* same-conduct test. *Id.* at 704, 113 S.Ct. at 2860. Ultimately, the Court found Dixon's subsequent prosecution violated the Double Jeopardy Clause because Dixon's drug offense did not include any element not contained in his previous contempt offense. *Id.* at 700, 113 S.Ct. at 2858. For the same reason, the Court also found the indictment against Foster charging him with assault based on the same event that was the subject of the prior contempt conviction was barred by the Double Jeopardy Clause. *Id.* The Court found the remaining counts against Foster, assault with intent to kill and threats to injure or kidnap, were not barred under *Blockburger* because the crimes were different offenses. *Id.* at 700–03, 113 S.Ct. at 2858–60.

Because of the factual similarity with the instant case, the *Dixon* opinion appears to be controlling and directly on point. However, when one looks carefully at the individual Justices' opinions, the decision becomes less clear.

Justice Scalia was joined by Justice Kennedy in overruling *Grady* and in finding Dixon's subsequent drug conviction and Foster's subsequent assault conviction were barred by Double Jeopardy. These two votes combined with the votes of Justices White, Stevens, and Souter, who were against overruling *Grady*, and, as a result concluded the subsequent prosecutions of Dixon and Foster were impermissible as to all counts, formed the majority opinion reversing the two convictions. Foster's remaining prosecutions were not barred because Justice Scalia's and Kennedy's votes were combined with the votes of Chief Justice Rehnquist, and Justices O'Connor and Thomas, who agreed to overrule *Grady*, but concluded none of the prosecutions were barred under a traditional application of *Blockburger*. Justice Blackmun joined this majority. However, Blackmun was against overruling *Grady* and would not apply the Double Jeopardy Clause to any contempt proceeding.

In light of these factions, *Dixon* has been analyzed as follows:

> The net effect of *Dixon* is that *Grady* has been overruled, leaving *Blockburger* as the sole test of same offense for successive prosecutions, as well as for multiple punishments in a single prosecution. How *Blockburger*'s same-elements test is to be applied in successive prosecution cases, however, appears to be far from settled. To what extent must the facts and elements of the crime charged in the earlier prosecutions be considered? *Grady*'s same-conduct test had afforded some guidance here; the split opinions in *Dixon* do not.

William Shepard McAninch, *Double Jeopardy: The Basics for Practitioners* (pt. 1), 2 Crim.Prac.L.Rep. 113, 120 (Apr. 1994). Because of the split decision, it is necessary to carefully examine the reasoning of the Justices who agreed to overrule *Grady*.

Justice Scalia, joined by Justice Kennedy, framed the initial issue to be addressed as "whether *Blockburger* analysis permits subsequent prosecution in this new criminal contempt context, where judicial order has prohibited criminal act." *Dixon*, 509 U.S. at 697, 113 S.Ct. at 2856. In Dixon's case, Scalia pointed out that the general contempt statute by itself

did not involve a specific criminal offense. *Id.* Scalia noted that Dixon could not commit an offense under the contempt statute until Dixon's release order was issued. *Id.* at 697–98, 113 S.Ct. at 2856–57. As a condition of this order, Dixon was not to commit "any criminal offense." As such, Scalia reasoned that because the order incorporated the entire criminal code, the "crime" of violating a condition of release could not be abstracted from the "element" of the violated condition. *Id.* at 698, 113 S.Ct. at 2857. Scalia found the underlying substantive criminal offense was "a species of lesser-included offense." *Id.* Thus, he concluded Dixon's drug prosecution violated the Double Jeopardy Clause because the offense did not include any element not contained in his previous contempt offense. *Id.* at 700, 113 S.Ct. at 2858.

Scalia applied the same analysis to Foster's case. Scalia found the simple assault charge was barred because the CPO, which ordered Foster not to "molest, assault, or in any manner threaten or physically abuse" his wife, expressly incorporated the statutory assault offense. *Id.* at 700, 113 S.Ct. at 2858. Therefore, Foster's assault offense did not include any element not contained in his contempt offense. *Id.* As to Foster's remaining charges, Scalia determined there was no double jeopardy violation for the assault with intent to kill prosecution because it required proof of a specific intent to kill, while the contempt offense required proof of knowledge of the CPO. *Id.* at 700–01, 113 S.Ct. at 2858–59. Similarly, Scalia found Foster's three counts for violation of a statute forbidding anyone to threaten to kidnap any person or to physically damage their property were not barred because the offense contained a separate element than the contempt offense. *Id.* at 702–03, 113 S.Ct. at 2858–60. Specifically, Scalia reasoned a conviction of the contempt offense required a willful violation of the CPO, whereas the statutory offense did not. *Id.* at 702, 113 S.Ct. at 2859. Moreover, he noted the statutory crime required a specific threat, while the CPO prohibited threatening "in any manner." *Id.* Therefore, each offense contained a separate element, and the *Blockburger* test for double jeopardy was not met. *Id.* at 703, 113 S.Ct. at 2859–60.

Chief Justice Rehnquist, joined by Justices O'Connor and Thomas, who had joined with Scalia and Kennedy to overrule

*Grady,* found that none of the criminal prosecutions were barred under *Blockburger. Id.* at 713, 113 S.Ct. at 2865. In reaching this decision, Rehnquist disagreed with Scalia's application of *Blockburger. Id.* at 714, 113 S.Ct. at 2865–66. Rehnquist stated *"Blockburger's* same-elements test requires us to focus, not on the terms of the particular court orders involved, but on the elements of contempt of court in the ordinary sense." *Id.* Rehnquist further stated, "Our double jeopardy cases applying *Blockburger* have focused on the statutory elements of the offenses charged, not on the facts that must be proved under the particular indictment at issue— an indictment being the closest analogue to the court orders in this case." *Id.* at 716–17, 113 S.Ct. at 2866. Applying a traditional *Blockburger* analysis, Rehnquist concluded, "Because the generic crime of contempt of court has different elements than the substantive criminal charges in this case, I believe that they are separate offenses under *Blockburger." Id.* at 714, 113 S.Ct. at 2865.

In reaching his decision, Rehnquist criticized Scalia's analysis in several respects. Primarily, Rehnquist asserted Scalia's decision "rejects the traditional view—shared by every Federal Court of Appeals and State Supreme Court that addressed the issue prior to *Grady* —that, as a general matter, double jeopardy does not bar a subsequent prosecution based on conduct for which a defendant has been held in criminal contempt." *Id.* at 714, 113 S.Ct. at 2865. He also disagreed with Scalia's lesser included offense analysis. He found none of Dixon's and Foster's crimes were barred because they could not be viewed as greater and lesser included offenses, but rather as separate and distinct offenses for double jeopardy purposes.[4] *Id.* at 719, 113 S.Ct. at 2868. Additionally, he stated:

---

4. Specifically, Rehnquist disagreed with Scalia's reliance on *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977), a case in which the Court held a subsequent prosecution for robbery with a firearm was barred by the Double Jeopardy Clause, because the defendant had already been tried for felony-murder based on the same underlying felony. Rehnquist believed *Harris* was distinguishable in that the felony-murder statute in *Harris* did not require proof of armed robbery, but did incorporate the statutory elements of various felonies upon which a felony-murder conviction could rest. *Dixon,* 509 U.S. at 717, 113 S.Ct. at 2867. In contrast, Rehnquist found, "[t]he criminal

By focusing on the facts needed to show a violation of the specific court orders involved in this case, and not on the generic elements of the crime of contempt of court, Justice Scalia's double-jeopardy analysis bears a striking resemblance to that found in *Grady* —not what one would expect in an opinion that overrules *Grady*.

*Id.* at 717, 113 S.Ct. at 2867.

A review of post-*Dixon* decisions in this state reveals Rehnquist's analysis is consistent with our Supreme Court's application of *Blockburger*. *See, e.g., State v. Easler,* 327 S.C. 121, 489 S.E.2d 617 (1997) (defendant's convictions for felony DUI causing death and reckless homicide arising from same vehicular accident were not barred by double jeopardy because the two offenses do not meet *Blockburger*'s same-elements test; defendant's convictions for felony DUI causing great bodily injury and ABHAN arising from same vehicular accident did not violate double jeopardy under *Blockburger* analysis given elements of offenses were separate and distinct).

This Court has also consistently applied a traditional *Blockburger* test in that we have strictly compared the elements of the challenged offenses. *See, e.g., State v. Moyd,* 321 S.C. 256, 468 S.E.2d 7 (Ct.App.1996) (prosecution for driving under suspension and driving while under a declaration that defendant was an habitual traffic offender did not violate double jeopardy because the two offenses do not have identical statutory elements, and one is not a lesser included offense of the other); *id.* (*Dixon* represents a narrowing of double jeopardy analysis, and returns the inquiry to the *Blockburger* test as the lone test for determining whether a prosecution violates the Double Jeopardy Clause); *State v. Lewis,* 321 S.C. 146, 467 S.E.2d 265 (Ct.App.1996) (double jeopardy did not bar subsequent prosecution of defendant who was convicted in municipal court for failure to stop on police command based on same conduct which gave rise to charge of assault while resisting arrest because the two offenses do not have identical statutory elements, and neither is a lesser included offense of the other).

---

contempt provision involved [in Dixon and Foster's case] ... contains no such generic reference which by definition incorporates the statutory elements of assault or drug distribution." *Id.*

 Applying the traditional *Blockburger* test, as explained by Justice Rehnquist, it is clear the elements of the contempt offense are different from the elements of the charge of second-degree criminal sexual conduct with a minor. Contempt results from the willful disobedience of a court order. *Brasington v. Shannon*, 288 S.C. 183, 341 S.E.2d 130 (1986). In comparison, the elements of second-degree criminal sexual conduct with a minor are as follows: (1) the actor engages in sexual battery, (2) with a victim who is at least fourteen years of age, but who is less than sixteen years of age, and (3) the actor is in a position of familial, custodial, or official authority to coerce the victim to submit or is older than the victim. S.C.Code Ann. § 16-3-655(3) (1985). Clearly, the offenses are separate and distinct, and prosecution for both does not violate the Double Jeopardy Clause.

Even applying Scalia's analysis, Warren's subsequent prosecution would not be barred. Unlike Dixon's release order and Foster's CPO, the restraining order in this case did not expressly incorporate a specific criminal offense. Instead, the order merely prohibited "unsupervised contact" between Warren and Christy. A finding of contempt, therefore, only required a willful violation of the restraining order through Warren's unsupervised contact with Christy. Although the family court described the contact in finding that "James Warren's conduct in sexually abusing the minor child was in direct violation of [the] order," the judge need not have made this additional finding. This finding, however, did not prohibit Warren's subsequent prosecution. Clearly, each offense contained a separate element, in that the contempt conviction required general "unsupervised contact," which prohibited sexual abuse, as well as any other contact. On the other hand, a conviction for second-degree criminal sexual conduct with a minor was more specific than the contempt conviction in that it is expressly limited to a sexual battery.

Finally, Warren's reliance on the factually similar case of *State v. Magazine*, 302 S.C. 55, 393 S.E.2d 385 (1990), is misplaced. In *Magazine*, a family court judge issued an order prohibiting Magazine from communicating with or abusing his wife. Magazine was subsequently held in contempt of that order because he had physically abused his wife. He was sentenced to one year imprisonment, suspended upon the

payment of a fine of $1,500 and compliance with the order. Three months later, Magazine was indicted for committing assault and battery of a high and aggravated nature upon his wife for the same incident for which he was found in contempt. Our Supreme Court concluded Magazine's contempt conviction was criminal in nature. Applying the *Grady* "same-conduct" test, the Court found the successive prosecution for ABHAN violated the Double Jeopardy Clause because the State proved the same conduct for which appellant was previously criminally sanctioned by the family court. *Id.* at 58, 393 S.E.2d at 387. Because the *Grady* "same-conduct" test has been overruled, we find *Magazine* to be inapplicable. *See State v. Easler*, 327 S.C. 121, 489 S.E.2d 617 (1997).

Accordingly, we find Warren's prosecution for second-degree criminal sexual conduct with a minor did not violate the Double Jeopardy Clause.

## II. Amendment of Indictment

Warren argues the trial court lacked subject matter jurisdiction to try him on an indictment which was not true billed by the grand jury.

Warren was originally indicted for first-degree criminal sexual conduct with a minor. The face of the original indictment alleged the following:

> That James Barney Warren did in Dorchester County on or about January 15, 1994, wilfully and unlawfully engage in criminal sexual conduct in the first degree in that James Barney Warren engaged in sexual battery, to wit: sexual intercource (sic) and fellatio with Kimberly C. Chenault who was 15 years of age, said defendant being in a position of familial authority to coerce victim and/or is older than victim.

This indictment was true billed by the grand jury.

Prior to trial, the State amended the indictment without objection to allege Warren committed second-degree criminal sexual conduct with a minor, with a fourteen-year-old victim. The amended indictment alleged the following:

> That JAMES BARNEY WARREN did in Dorchester County on or about January 15, 1994, wilfully and unlawfully engage in criminal sexual conduct in the second degree in

that James Barney Warren engaged in sexual battery, to wit: sexual intercourse and fellatio with KIMBERLY C. CHENAULT who was 14 years of age, said defendant being in a position of familial authority to coerce victim and/or is older than the victim.

■ An objection to defects which appear on the face of an indictment must be raised before the jury is sworn. S.C.Code Ann. § 17–19–90 (1985); *State v. Lewis*, 321 S.C. 146, 149 n. 1, 467 S.E.2d 265, 267 n. 1 (Ct.App.1996). However, issues related to subject matter jurisdiction may be raised at any time. *Browning v. State*, 320 S.C. 366, 465 S.E.2d 358 (1995).

■ An indictment is sufficient if it contains the necessary elements of the offense intended to be charged and sufficiently apprises the defendant of what he or she must be prepared to meet. *Browning*, 320 S.C. at 368, 465 S.E.2d at 359. Amendments to an indictment are permissible if: 1) they do not change the nature of the offense; 2) the charge is a lesser included offense of the crime charged on the indictment; or 3) the defendant waives presentment to the grand jury and pleads guilty. *State v. Myers*, 313 S.C. 391, 393, 438 S.E.2d 236, 237 (1993).

S.C.Code Ann. § 16–3–655(3) (1985) provides:

A person is guilty of criminal sexual conduct in the second degree if the actor engages in sexual battery with a victim who is at least fourteen years of age but who is less than sixteen years of age and the actor is in a position of familial, custodial, or official authority to coerce the victim to submit or is older than the victim.

■ The amendments to the indictment changed the caption of the indictment, the name of the offense within the body of the indictment, and the age of the victim. Because the caption of the indictment is not part of the finding of the grand jury, it could be corrected and amended at any time by the court. *Wilson v. State*, 327 S.C. 45, 488 S.E.2d 322 (1997). Furthermore, the remaining amendments did not change the substantive nature of the offense. Like the original indictment, the amended indictment set forth all of the statutory elements for second-degree criminal sexual conduct with a minor. The amendment to the victim's age did not change the nature of the offense because a conviction under § 16–3–655(3)

requires the victim to be between the ages of fourteen and sixteen years old. Accordingly, the trial judge did not err in amending the indictment.

### III. Limiting Instruction

■ Warren argues the trial judge erred in refusing to give a jury charge which limited the effect of the prior bad acts alleged during the trial.

During Christy's cross-examination, defense counsel asked Christy about the restraining order that prohibited contact with her parents. Christy responded her parents violated the order by taking her to her friend's party. On re-direct examination, the solicitor asked Christy why her parents were under a restraining order. Christy responded, "I guess because the sexual abuse against my sister that was alleged." The solicitor then asked Christy whether she was "the first person in [her] family to say [Warren] had sex with them when they were under age." When defense counsel objected, the trial judge discussed the objection with the attorneys out of the presence of the jury.

During this discussion, defense counsel argued the allegations of sexual abuse involving Brandy were prejudicial, particularly because the charges against Warren had been dismissed. Because the solicitor had already asked the question in front of the jury, defense counsel asked the judge to cure the error by "[s]topping the State in regards to that line of questioning." The judge then asked defense counsel if they were planning to bring out in their case the fact the two sisters had alleged Warren sexually abused them and one of them had dropped the charges. Defense counsel responded, "Your Honor, that was not my plan to do that. This is Christy's case ... My intention was not to bring Brandy in this case. She is here to testify; however, she's not here to testify in regards to her allegations not at all."

The judge asked Warren's counsel what he should tell the jury to cure the error. Counsel responded, "The basic thing— Oh God, they already heard it, disregard." The judge instructed the jury as follows:

Now, Mr. Foreman, members of the jury, there was some exchange of involving a sister of this defendant, of this

young lady. That doesn't have anything to do with this case so just disregard that. I don't know anything about it, and I'm not going to try anything else even if there is anything else.

Even though the trial judge gave this curative instruction, the sexual abuse allegations involving Brandy were brought up several other times during the trial. First, during cross-examination of Dr. Elizabeth Ralston, an expert witness on child sexual abuse, defense counsel asked whether Christy had reported any sexual abuse on November 17, 1992. Dr. Ralston stated she saw Christy at the request of D.S.S. because of allegations that Warren had sexually abused Brandy.

Moreover, Donna Hernandez, Christy's school guidance counselor, testified Christy told her she was in foster care with the Garrisons because of allegations that Warren had sexually abused Brandy. Hernandez further testified Christy told her Warren had also sexually abused her.

Furthermore, on direct-examination of Marilyn Lassiter, the guardian ad litem, the solicitor asked when the restraining order was put into effect against Warren and his wife. Defense counsel objected to the question on the grounds it was not relevant to the case. The judge permitted the witness to testify concerning the restraining order. Lassiter testified the restraining order was "based on another case of allegations and a finding of sexual abuse against him."

Investigator Ivan D. Johnson, employed with the Dorchester County Sheriff's Department, testified his first contact with Warren was on October 4, 1992, when Brandy alleged Warren had sexually assaulted her. On cross-examination, defense counsel again brought up Investigator Johnson's involvement with Brandy's allegations.

Finally, on direct-examination, Robin Joseph, a counselor, testified about her counseling sessions with Christy. Joseph had been seeing Brandy because of allegations that Warren had sexually abused her. Defense counsel objected to the testimony on the ground it was not responsive to the question. The trial judge sustained the objection and instructed the jury to disregard Joseph's response.

Defense counsel then requested the judge instruct Joseph concerning her response to the solicitor's questions. Out of the presence of the jury, the judge instructed Joseph that "we are trying a case in which this defendant is accused of sexually molesting this child, Christy, okay." The judge informed Joseph she could testify to the findings she made by talking with those involved in the case. He cautioned her about testifying to what someone had told her.

The solicitor continued to question Joseph out of the presence of the jury. Joseph testified she had met Cheryl Warren when she was reunited with Brandy. The solicitor instructed Joseph not to talk about Brandy. The judge allowed Joseph to testify she had met Christy's mother when she was involved with Brandy's case. Defense counsel objected to this testimony on the grounds it was not responsive to the question. The judge responded he had already instructed the witness and the solicitor knew what questions were proper.

When the jury returned to the courtroom, the solicitor continued her direct-examination of Joseph. Joseph testified Cheryl Warren had not been supportive of Christy. The solicitor asked Joseph what was the basis of her opinion. Joseph responded she first met Cheryl Warren when she was counseling Brandy. Joseph stated the mother did not support Brandy during this time. She further testified after the mother was reunited with Christy, she then became supportive of Brandy. She stated Cheryl Warren had told her that she had "kicked her husband out." Defense counsel objected on the grounds the testimony constituted hearsay, was not responsive to the question, and dealt with Brandy. The judge sustained counsel's objection.

The solicitor instructed Joseph to only talk about Christy. In her next response, Joseph again referred to Brandy. Defense counsel again objected to Joseph's reference to Brandy's case. The trial judge sustained the objection. The solicitor again instructed Joseph not to refer to Brandy.

Defense counsel asked Warren whether he had sexually molested Brandy. Warren responded he had not. He denied ever telling Michelle O'Quinn, one of Brandy's friends, he had sexual intercourse with Brandy.

On cross-examination, the solicitor questioned Christy's mother concerning Brandy's allegations against Warren. She admitted Brandy made accusations that Warren had sexually molested her.

The defense called Brandy as a witness. On direct-examination, Brandy denied Warren sexually abused her. She stated she made the allegations to have freedom from the rules placed on her. On cross-examination, the solicitor asked Brandy to read to the jury her statement to the police in which she made the allegations of sexual abuse.

Dr. Benjamin Saunders, a clinical social worker and an expert on child sexual abuse, testified for the defense. Saunders testified he met with Warren, his wife, Brandy, Christy, and Ryan when they were referred to him by D.S.S. based on Brandy's allegations of sexual abuse. Several months later, he met with Christy after she alleged Warren had sexually abused her.

In reply, the solicitor called Michelle O'Quinn. O'Quinn testified Warren told her he had been having sexual intercourse with Brandy since she was nine years old.

At the close of the evidence, Warren's counsel requested the trial judge charge the following:

The mere inference or suggestion of a prior bad act is never proof that the crime with which a defendant is charged actually happened. You must weigh all the evidence presented as it pertains to the crime for which the defendant is charged. What did or did not happen in the past, as it relates to other persons and the defendant, is not evidence as to whether the defendant is guilty of this charge. Alleged prior bad acts, as presented in this case, should not be considered as any proof that this crime was committed by the defendant.

Defense counsel argued the charge was directed at Brandy's statement which was read to the jury, as well as the reply witness. He asserted the charge was applicable because the statement and reply testimony dealt with a prior bad act of the same type for which Warren had been indicted. The trial judge declined to charge the request, reasoning it was inapplicable because Warren had not been convicted of any prior bad acts.

As part of his charge, the trial judge instructed the jury on crimes of moral turpitude and evidence of Warren's good character and reputation. Defense counsel again objected to the omission of a charge concerning prior bad acts.

When evidence of other crimes is admitted for a specific purpose, the judge is required to instruct the jury to limit their consideration of this evidence for the particular purpose for which it is offered. *State v. Steadman*, 216 S.C. 579, 59 S.E.2d 168 (1950), *cert. denied*, 340 U.S. 850, 71 S.Ct. 78, 95 L.Ed. 623 (1950); *see, e.g., State v. Brown*, 296 S.C. 191, 371 S.E.2d 523 (1988) (trial judge's failure to give a limiting instruction was reversible error where evidence of defendant's prior convictions was offered for impeachment purposes); *State v. Staley*, 294 S.C. 451, 365 S.E.2d 729 (1988) (trial judge's refusal of defendant's submitted charge limiting use of evidence of his prior convictions solely for impeachment purposes constituted reversible error; failure to charge was especially damaging given defendant was on trial for the same offense for which he had been previously convicted); *State v. Peterson*, 287 S.C. 244, 335 S.E.2d 800 (1985), *overruled on other grounds by, State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991) (trial judge's failure to instruct jury that defendant's prior convictions could not be used as evidence of defendant's guilt, but solely for impeachment purpose constituted error).

Our Court has recognized an exception to this general rule. *State v. Nix*, 288 S.C. 492, 343 S.E.2d 627 (Ct.App.1986). In that case, co-defendants Quarles and Nix, were tried and convicted of armed robbery, kidnapping, and first-degree criminal sexual conduct. At trial, evidence was admitted that Nix and Quarles had stolen a vehicle two hours before committing the charged crimes. Attorneys for Nix and Quarles requested the trial judge instruct the jury limiting consideration of this evidence only if the jury found a common scheme, design or plan connecting the car theft to the offenses charged. The trial judge denied the request to charge.

On appeal, we found the car theft evidence was admissible because that evidence and the attendant circumstances and facts were so related to the charged crimes that they constituted evidence of a common scheme or plan between the crimes. *Id.* at 496, 343 S.E.2d at 629. We found no error in

the trial judge's refusal to give a limiting instruction. *Id.* at 498, 343 S.E.2d at 630. We held a limiting charge is "unnecessary where evidence of the other crime is admissible on the main issue or where the evidence admitted to show motive or intent is of acts which may well be supposed to have been done in furtherance or (sic) such motive or intent." *Id.*

In a subsequent case, our Supreme Court recognized another exception to the general rule concerning limiting instructions. *State v. Johnson,* 306 S.C. 119, 410 S.E.2d 547 (1991), *cert. denied,* 503 U.S. 993, 112 S.Ct. 1691, 118 L.Ed.2d 404 (1992). In that case, Johnson was tried and convicted of the murder of a state highway trooper. At trial, the State introduced evidence of another murder involving Johnson which occurred earlier the same day as the trooper's murder. On appeal, Johnson argued the trial judge erred in admitting this evidence and in failing to instruct the jury as to the limited use of the evidence of the earlier murder. The Supreme Court found the evidence established Johnson's motive and intent for murdering the trooper. *Id.* at 125, 410 S.E.2d at 551. The Court held the failure to give a limiting instruction did not constitute reversible error because evidence of the murder was directly related to the commission of the trooper's murder and thus, formed part of the *res gestae.* *Id.* at 127, 410 S.E.2d at 552.

Recently, our Supreme Court addressed the question of when a limiting instruction regarding *Lyle*[5] is required. *State v.. Timmons,* 327 S.C. 48, 488 S.E.2d 323 (1997). In *Timmons,* the defendant was implicated in two crime sprees, one on February 27, 1993, and another on April 9, 1993. Timmons was tried on the February 27th crimes. He admitted he had participated in the events of April 9th, but denied his involvement in the events of February 27th. The State sought to introduce evidence of the April 9th crime spree to prove common scheme or plan under *Lyle.* Although Timmons objected, the trial judge admitted the evidence. Timmons requested a limiting instruction regarding the bad acts admitted under *Lyle.*[6] The trial judge denied the request.

---

5. *State v. Lyle,* 125 S.C. 406, 118 S.E. 803 (1923).

6. The appellate record in Timmons reveals counsel addressed the court as follows:

The Supreme Court found there was insufficient similarity between the two crime sprees to prove a common scheme or plan under *Lyle*. *Timmons*, 327 S.C. at 53, 488 S.E.2d at 326. The Court went on to address Timmons's second argument in which he contended the trial judge erred in refusing to give the jury a limiting instruction regarding the *Lyle* evidence. The Court agreed to address this issue "because of the confusion surrounding when a limiting instruction regarding *Lyle* is required." *Id.* at 54, 488 S.E.2d at 326.

The Supreme Court held it was reversible error to refuse to give a requested limiting instruction where evidence of other crimes was introduced to prove only a common scheme or plan. *Id.* at 55, 488 S.E.2d at 327. In reaching its decision, the Court distinguished *Nix* and *Johnson*. The Court reasoned in both *Nix* and *Johnson* the prior bad act evidence was being admitted as part of *res gestae* of the offense for which the defendant was charged. *Id.*

In the instant case, like *Timmons*, the alleged prior bad act was admitted only to prove a common scheme or plan. Accordingly, as will more fully be discussed, the trial judge erred in failing to give a limiting instruction.

▆▆ As a threshold matter, we find Warren cannot challenge the admission of the alleged prior bad act evidence on appeal because his trial counsel did not object to the admission of certain evidence. *See State v. Johnson*, 324 S.C. 38, 476 S.E.2d 681 (1996) (a contemporaneous objection is required at trial to preserve an issue for appellate review); *State v. Williams*, 303 S.C. 410, 401 S.E.2d 168 (1991) (an issue must be raised to and ruled on by the trial judge to preserve for appellate review); *State v. Black*, 319 S.C. 515, 462 S.E.2d 311 (Ct.App.1995) (failure to object when evidence is offered constitutes a waiver of the right to object); *State v. Hoffman*, 312 S.C. 386, 440 S.E.2d 869 (1994) (an issue which is not properly preserved cannot be raised for the first time on appeal).

Secondly, your Honor, we will ask that the court would charge a *Lyle* charge, your Honor, based on the fact that there may be some confusion in the mind of the jury stating the fact of the April 9th robberies versus the February 27th, 1993 robberies, your Honor. We feel there should be some charges, one in which that would allow the jury not to confuse the fact that the defendant is being charged for those crimes for the April 9th.

■ However, counsel's conduct did not preclude Warren from receiving a limiting instruction. Our Supreme Court has held a trial court's refusal to give a requested instruction limiting testimony concerning a defendant's prior convictions for impeachment purposes constituted reversible error even though the testimony of prior convictions was brought out by the defendant's attorney during direct examination of the defendant. *State v. Smalls,* 260 S.C. 44, 194 S.E.2d 188 (1973). In *Smalls,* the Court rejected the State's argument Smalls was not entitled to a limiting instruction since Smalls first testified concerning his prior convictions. The Court reasoned:

> It is readily apparent that such testimony was first elicited from appellant by his counsel solely to anticipate its later introduction by the prosecution and to thereby avoid the possible inference that appellant was trying to conceal it. There is nothing to indicate that the present testimony was introduced by appellant for any purpose other than to gain such favorable reaction as might arise from a frank disclosure of damaging testimony, which the prosecution had the right to later introduce.

*Id.* at 47, 194 S.E.2d at 189.

In the instant case, defense counsel was placed in a similar situation. Initially, counsel objected to the admission of allegations that Warren had sexually abused Brandy. However, once the jury heard this evidence, even though the judge gave a curative instruction, defense counsel apparently concluded as a matter of trial strategy that Warren had to introduce testimony denying the allegations. This is evident because Warren's lawyers indicated, prior to the initial curative instruction, they did not intend to have Brandy testify concerning her allegations against Warren. However, after repeated references to Brandy's case, it became necessary for defense counsel to cross-examine witnesses on these allegations and to refute the testimony by calling Brandy as a witness.

■ The dissent asserts the trial judge's curative instruction was sufficient to cure any prejudice. This initial curative instruction, however, was given during Christy's testimony. Christy was the State's first witness. Because the trial judge only instructed the jury to disregard what Christy

had testified to, the instruction could not have cured the subsequent references to sexual abuse allegations involving Brandy. Moreover, the dissent's reliance on cases requiring a defendant to object to the sufficiency of a curative instruction or to move for a mistrial is misplaced. Warren was not seeking a mistrial, and this decision did not constitute a waiver of the right to receive a limiting instruction. After defense counsel's repeated objections were sustained and the tactical decision to refute the allegations was made, counsel sought to limit the jury's consideration of this testimony. Under the analysis in *Smalls*, there is no requirement that counsel continually object to the testimony or request a curative instruction throughout the trial in order to receive a limiting instruction during the trial judge's charge to the jury. Once the evidence was admitted, Warren was entitled to receive a limiting instruction. *See Smalls*, 260 S.C. at 46–47, 194 S.E.2d at 189 (When evidence of other crimes or offenses is admitted and the party requests a limiting instruction, the evidence should be limited and guarded carefully by instructions to the jury.).

Because the admissibility of Warren's alleged prior bad act is not challenged on appeal, we need not address that issue. It could only have been admitted under the common scheme or plan exception to *Lyle*.[7] *See State v. Hallman*, 298 S.C. 172, 379 S.E.2d 115 (1989) (in prosecution of defendant for sexual abuse of a foster child, evidence of alleged sexual abuse of other foster children admissible to show common scheme or plan); *State v. McClellan*, 283 S.C. 389, 323 S.E.2d 772 (1984)

---

7. Generally, evidence of prior crimes is not admissible to prove the crime for which the defendant is charged. *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923). Evidence of other crimes is admissible when that evidence tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial. *Id.* at 416, 118 S.E. at 807; *see* Rule 404(b), SCRE (Evidence of other crimes, wrongs, or acts may be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent). If not the subject of a conviction, indictment, or arrest, proof of prior bad acts must be clear and convincing. *State v. Smith*, 300 S.C. 216, 387 S.E.2d 245 (1989); *State v. Blanton*, 316 S.C. 31, 446 S.E.2d 438 (Ct.App. 1994).

(testimony of defendant's daughters concerning defendant's prior sexual misconduct was admissible as evidence of common scheme or plan in defendant's trial for second-degree criminal sexual conduct against his youngest daughter where experiences of each daughter paralleled that of her sisters); *State v. Blanton*, 316 S.C. 31, 446 S.E.2d 438 (Ct.App.1994) (evidence of prior acts of sexual abuse involving defendant and other victims was sufficiently similar and, therefore, admissible to show common scheme or plan by defendant on trial for first-degree criminal sexual conduct with a minor).

Applying *Timmons,* it was reversible error for the trial judge to refuse to give a limiting instruction where evidence of Warren's alleged prior bad act involving Brandy was introduced to prove only a common scheme or plan.

 Based on the clear directive in *Timmons,* this type of error is not subject to harmless error analysis. *Cf. State v. Bryant,* 307 S.C. 458, 415 S.E.2d 806 (1992) (trial court's failure to give a charge limiting testimony of defendant's prior criminal record solely for impeachment purposes constituted reversible error and could not be considered harmless).

Moreover, it is improbable this type of error was not prejudicial. The trial judge's failure to give a limiting instruction was especially damaging given that Warren was being tried for the same type of sexual misconduct as that alleged by Brandy. *Cf. State v. Johnson,* 306 S.C. 119, 126, 410 S.E.2d 547, 552 (1991) ("The reasoning behind [the general rule concerning limiting instructions] is to protect against a jury convicting a defendant just because he has committed other crimes and not because it has been proven that he is guilty of the crime for which he is accused."); *State v. Staley,* 294 S.C. 451, 365 S.E.2d 729 (1988) (trial judge's refusal of defendant's submitted charge limiting use of evidence of his prior convictions solely for impeachment purposes constituted reversible error; failure to charge was especially damaging given defendant was on trial for the same offense for which he had been previously convicted).

 Even if Warren were entitled to a limiting instruction, the State asserts 1) Warren did not ask for an instruction limiting consideration of the prior bad acts to the *Lyle* exceptions; 2) the proposed instruction improperly commented on

the facts; and 3) the proposed instruction was an incorrect statement of the law concerning prior bad acts. Thus, the trial judge properly refused to charge Warren's proposed instruction.

Although we agree Warren's proposed instruction was an incorrect statement of the law concerning prior bad acts, Warren's counsel informed the court during the charge conference he was not "married to [his requested] instruction, just some instruction about what happened not being evidence that this happened, what they alleged happened." In comparison, the Supreme Court in *Timmons* rejected the State's argument that Timmons's issue regarding the jury instruction was not preserved because Timmons's counsel had not submitted a written proposed instruction and had not distinctly stated what instruction he wanted. *Timmons*, 327 S.C. at 54, 488 S.E.2d at 326. The Court stated "[i]t is clear appellant wanted an instruction limiting the use of the *Lyle* evidence." *Id.* In the same respect, Warren's counsel's failure to provide a proper instruction would not have precluded him from receiving one. Therefore, the trial judge erred in refusing to give a limiting instruction.

Accordingly, the decision of the circuit court is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

CURETON, J., concurs and GOOLSBY, J., concurs and dissents in separate opinion.

GOOLSBY, Judge (concurring and dissenting):

I concur with Parts I and II of the majority opinion. I disagree with the holding set forth in Part III and, therefore, respectfully dissent. I would affirm the defendant James Warren's conviction.

Warren argues an ongoing *Lyle* error resulted from the admission of evidence of allegations of prior sexual abuse made by Christy's sister Brandy. The evidence of which Warren complains was admitted at least ten times without objection, sometimes elicited by the defendant himself.[1]

---

1. The majority opinion sets out the instances in which the questioned evidence was admitted without objection.

When the State attempted on other occasions to admit the same evidence, the effort was met with an objection. Each time defense counsel objected on the ground that the testimony constituted inadmissible prior-bad-act evidence, the court sustained the objection. Further, when counsel requested a curative instruction, the trial court instructed the jury to disregard the testimony.[2]

At the close of trial, Warren's counsel requested the following jury charge:

> The mere inference or suggestion of a prior bad act is never proof that the crime with which a defendant is charged actually happened. You must weigh all the evidence presented as it pertains to the crime for which the defendant is charged. What did or did not happen in the past, as it relates to other persons and the defendant, is not evidence as to whether the defendant is guilty of this charge. Alleged prior bad acts, as presented in this case, should not be considered as any proof that this crime was committed by the defendant.

Defense counsel explained to the court that the charge addressed Brandy's cross-examination and introduction of her pre-trial statement (to which defense counsel did not object). The trial court refused to give the requested charge but added charges on moral turpitude and good character of the defendant.

I would hold the trial court did not abuse its discretion in failing to give a limiting instruction because (1) the court gave a sufficient curative instruction when an appropriate objection was raised to the challenged evidence and when a curative instruction was contemporaneously requested and (2) the challenged evidence, when met with no objection, came in without limitation.

Regarding the first reason why the trial court did not abuse its discretion, the requested charge was simply an instruction to disregard evidence of alleged prior bad acts, and the court

---

2. Defense counsel also objected to other attempts by the State to admit the same evidence but did not argue that the evidence was inadmissible as a prior bad act. The trial court overruled these objections and allowed the testimony without limitation. These objections form no basis for Warren's appeal.

had already given a charge of the kind requested upon sustaining an objection based on that ground.

The majority misinterprets my analysis on this point. When Christy testified regarding Brandy's allegations, the trial court sustained Warren's objection and gave a curative instruction. Because Warren did not object to the curative instruction or move for a mistrial, the error is deemed cured and no later curative charge is necessary. *See State v. George*, 323 S.C. 496, 510, 476 S.E.2d 903, 911–12 (1996) ("If the trial judge sustains a timely objection to testimony and gives the jury a curative instruction to disregard the testimony, the error is deemed to be cured. No issue is preserved for appellate review if the objecting party accepts the judge's ruling and does not contemporaneously make an additional objection to the sufficiency of the curative charge or move for a mistrial."), *cert. denied*, —— U.S. ——, 117 S.Ct. 1261, 137 L.Ed.2d 340 (1997). As a matter of law, then, when Warren failed to object to the curative instruction or move for a mistrial, he agreed that any error, and thus any prejudice, was cured.

I agree with the majority that the curative instruction that the trial court gave could not have cured subsequent references to Brandy's allegations; however, because the trial court apparently agreed that allegations made by Brandy had no place in the trial on Christy's abuse, it never would have been "necessary for defense counsel to cross-examine witnesses on these allegations and to refute the testimony by calling Brandy as a witness," as the majority asserts, if Warren had raised appropriate objections to the "repeated references to Brandy's case."

Warren's failure to object to evidence regarding Brandy's allegations allowed the trial court to admit the evidence and to do so without limitation. This made a curative instruction at the end of the trial totally unnecessary. The trial court must instruct the jury to limit its consideration of evidence to the *particular purpose for which it is offered. State v. Steadman*, 216 S.C. 579, 59 S.E.2d 168 (1950). The challenged evidence was admitted at least ten times without objection and without limitation; therefore, it was not offered for a particular purpose.

Furthermore, a failure to make a proper contemporaneous objection to the admission of evidence cannot, as Warren attempts to do here, be "bootstrapped" by a subsequent request for a limiting instruction. *See State v. Vaughn*, 124 Idaho 576, 861 P.2d 1241 (Ct.App.1993) (holding refusal to charge requested limiting instruction not error when defendant neither objected to evidence nor requested limiting instruction when the evidence was offered); *People v. Herr*, 203 A.D.2d 927, 611 N.Y.S.2d 389 (1994) (holding refusal to charge instruction on voluntariness of defendant's statement not error when defendant failed to object to admission of the statement), *aff'd*, 86 N.Y.2d 638, 635 N.Y.S.2d 159, 658 N.E.2d 1032 (1995); *cf. State v. Moultrie*, 316 S.C. 547, 451 S.E.2d 34 (Ct.App.1994) (finding a failure to make a proper contemporaneous objection to the admission of evidence cannot be bootstrapped later by a motion for mistrial).

I disagree with the majority's application of *State v. Smalls*, 260 S.C. 44, 194 S.E.2d 188 (1973), to the facts of this case. In particular, I do not agree with the majority's contention that Warren's counsel was placed in a situation similar to defense counsel in that case. In *Smalls*, the defendant testified on direct about his prior convictions to avoid an inference that he was trying to conceal them because the prosecution would likely offer them as impeachment evidence.

First, *Smalls* and the other cases cited by the majority [3] are distinguishable because the evidence in those cases related to impeachment of the defendant; the evidence here was neither offered by the State to impeach Warren nor offered by Warren to anticipate impeachment. Further, in the cases cited by the majority, the defendant's first opportunity to raise the issue of limiting the jury's consideration of evidence was when jury charges were submitted to the court. Here, Warren could have objected and asked for instructions as necessary.

More important, the majority incorrectly assumes that "once the jury heard th[e] evidence [of prior sexual abuse of

---

3. Namely, *State v. Peterson*, 287 S.C. 244, 335 S.E.2d 800 (1985), *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991); *State v. Staley*, 294 S.C. 451, 365 S.E.2d 729 (1988); and *State v. Steadman*, 216 S.C. 579, 59 S.E.2d 168 (1950).

Brandy], even though the judge gave a curative instruction, defense counsel apparently concluded as a matter of trial strategy that Warren had to introduce testimony denying the allegations." The record before us reveals that after the jury heard the challenged evidence but before the court instructed the jury to disregard it, Warren's counsel informed the court that she did not intend to use Brandy's allegations at all. The following exchange occurred between Warren's counsel, Ms. Hardee, and the court:

THE COURT: Well, think, now. Because if you tell me you are not going to bring it up, I might think about not letting the solicitor ask that question.

MR. LEIENDECKER (co-defense counsel): She's already asked the question in front of the jury.

THE COURT: Well, I realize—well, then, you object to it? How do you want me to cure it?

MS. HARDEE: Stopping the State in regards to that line of questioning.

THE COURT: All right. Now, if I stop her, are you not going to bring out in your defense the fact that both of them brought it against him and one of them was dropped?

MS. HARDEE: Sir, to tell you that, that was not my plan to—

THE COURT: Do you want to argue it? I don't mind you arguing.

MS. HARDEE: Your Honor, that was not my plan to do that. This is Christy's case.

THE COURT: Are you telling me if I keep it out now you're not going to bring it in. Is that what you're telling me?

MS. HARDEE: No sir. I mean, *yes, I'm not going to bring it in. My intention was not to bring Brandy in this case.* She is here to testify; however, she's not here to testify in regards to her allegations, not at all.

. . . .

THE COURT: Do you want me to try to correct this for the jury?

MS. HARDEE: Yes, sir.

THE COURT: And [what] would you like for me to tell the jury?

MS. HARDEE: The basic thing—Oh God, they already hear[d] it, *disregard.*

(Emphasis added.)

The court then charged the following:

Now, Mr. Foreman, members of the jury, there was some exchange of involving a sister of this defendant, of this young lady. That doesn't have anything to do with this case so just disregard that. I don't know anything about it, and I'm not going to try anything else even if there is anything else.

Warren's counsel then responded, "All right."

I would affirm.[4]

---

4. It is unnecessary to address, as the State urges this court to do, whether the trial court properly denied the requested charge because it was an improper comment on the facts and a misstatement of the law.